516 A.2d 1211

COMMONWEALTH of Pennsylvania, Appellant,

v.

Keith WHITE, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Joseph CRUMP, Appellee.

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed Oct. 23, 1986.

122

Susan V. Kahn, Assistant District Attorney, Philadelphia, for Com., appellant.

Donald Bronstein, Philadelphia, for appellees.

Before CIRILLO, President Judge, and WICKERSHAM and KELLY, JJ.

KELLY, Judge:

This case involves an appeal by the Commonwealth of an order granting the appellees' motion to suppress. The trial court found that the appellees, Joseph Crump and Keith White, had been arrested without probable cause and that all physical evidence and statements gained as a result of the illegal arrest must be suppressed. Upon review, we find that the appellees were subjected to a reasonable investigatory detention and then properly arrested when a brief investigation led to the discovery of additional facts which established probable cause for a valid arrest. Accordingly, we reverse the suppression order.

It is well settled that when a suppression motion is granted, and when the Commonwealth asserts in good faith that the granting of the motion substantially impairs or effectively terminates the prosecution because of lack of evidence, the Commonwealth has the right to appeal the suppression order. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984). The suppression order in the instant case meets the standard for appealability in that the Commonwealth has alleged in good faith and it is readily apparent from the record that suppression of the physical evidence and statements would substantially impair the prosecution of the appellees.

Our scope of review is limited primarily to questions of law. *See Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978); *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1977). We are bound by the suppression court's findings of fact, if those findings are supported by the record. *Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376 (1985); *Commonwealth v. Brown*, 341 Pa.Super. 138, 491 A.2d 189 (1985). In determining whether the findings of fact are supported by the record, we are to consider only the evidence of the appellees and so much of the evidence of the appellant which, as read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Hamlin*, 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). It is for the suppression court as the trier of fact, rather than the reviewing court, to determine credibility. *Commonwealth v. Bonasorte*, 337 Pa.Super. 332, 486 A.2d 1361 (1984).

However, we are "not bound by findings wholly lacking in evidence." *Hamlin*, 503 Pa. at 215, 469 A.2d at 139, *citing Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977). Nor are we bound by the suppression court's conclusions of law. *Commonwealth v. Lark*, 505 Pa. 126, 477 A.2d 857 (1984); *Commonwealth v. Scatena*, 332 Pa. Super. 415, 481 A.2d 855 (1984).

A suppression hearing was conducted before the Honorable Albert W. Sheppard on November 4, 1985. The sole witness to testify at this hearing was Officer David Marmien. At the close of the hearing, Judge Sheppard specifically stated that he determined Officer Marmien "to be a credible officer." (N.T. 11/4/85 at 24–27). On February 27, 1986, Judge Sheppard filed an opinion in which he summarized the salient facts as follows:

On February 28, 1985, at 2:30 in the afternoon, Philadelphia Police Officers Marmien and Derein received a radio assignment to investigate males removing property from 2138 West Columbia Avenue (N.T. 8–9, 24). Within two minutes, the officers arrived at a vacant lot at 22nd and Nicholas Streets—a position one-half block south and one-half block west of the subject location—where they observed the two defendants walking west and carrying four, 4 ft. by 8 ft., formica sheets (N.T. 9–11).

The officers pulled their cars to the curb on 22nd Street, exited the vehicles, approached and stopped the males in the middle of 22nd Street (N.T. 12). They asked the defendants where they had gotten the sheets, and defendants replied that they were contractors and had bought the sheets in the *22* (twenty-two) hundred block of Columbia Avenue (N.T. 13–14).

At that point the officers placed defendants in one of the police cars (N.T. 14) in the custody of Officer Derein (N.T. 21), while Officer Marmien went to investigate the subject premises (N.T. 14–15). Some time later, when Officer Marmien returned to the police vehicles, he encountered a female who identified herself as the property owner (N.T. 16), and who identified the formica sheeting as belonging to her (N.T. 17).

On this record, this Court determined that, in fact, the defendants were arrested and that probable cause for that arrest did not exist.

Suppression Court Opinion at 2–3.

Upon review of the transcript of the suppression hearing, and in light of the suppression court's specific determina-

tion that Officer Marmien's testimony was credible, we are compelled to make two important corrections to the suppression court's summary of the salient facts.

First, the credible and uncontradicted testimony of Officer Marmien was that he and Officer Derein first observed the appellees in the vacant lot at a point ten to twenty feet from the fence surrounding 2138 Columbia Avenue, and twenty to thirty-five feet from the building at 2138 Columbia Avenue, which was formerly known as Eddy's Barbeque Chicken. To the extent that the suppression court's general findings may conflict with this testimony,[1] the findings are "wholly lacking in evidence" and must be rejected. *Hamlin, supra.*

Secondly, the suppression court inaccurately characterized the length of the appellees' detention in the police car. Although the suppression court assigned no specific time interval to Officer Marmien's investigation of the premises at 2138 Columbia Avenue, the suppression court's opinion states:

> Furthermore, the defendants were held, without their consent, in police custody for that period of time that it required Officer Marmien to walk to, and inspect the premises, and return to the police vehicles—a period of time not described in the record, but realistically not inconsiderable in duration.

Suppression Court Opinion at 5. The credible and uncontradicted testimony of Officer Marmien on this issue was as follows:

Q. How much time, from the time that you arrived at the scene initially, after responding to the radio call, to the time you placed the handcuffs on the defendant, how much time would you say elapsed, total?

A. Less than five minutes.

---

1. In its summary of the salient facts, the suppression court described the location of the vacant lot generally, but did not actually place the appellees within the lot in terms of their proximity to 2138 Columbia Avenue.

(N.T. 11/14/85 at 17). Thus the suppression court's characterization of the length of the detention is not only wholly lacking in support, but is also contrary to the credible, uncontradicted testimony of Officer Marmien on the issue. *Hamlin, supra.*

We now turn to our review of the legal conclusions drawn by the trial court. The suppression court, relying on its interpretation of *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1983), *cert. denied* 459 U.S. 1178, 103 S.Ct. 803, 74 L.Ed.2d 1025 (1983), concluded that the appellees were placed under arrest when they were directed to sit in the police car, and that at that time probable cause did not exist for an arrest. We cannot agree.

In *Lovette,* our Supreme Court held that placing defendant and his companions in a police vehicle and transporting them to the scene of an offense, without their consent and without exigent circumstances, constituted an illegal arrest without probable cause and that evidence gained as a result of the arrest must be suppressed notwithstanding the Commonwealth's contention that the seizure was intended to serve investigative purposes rather than to arrest and charge the suspect. *See Lovette,* 498 Pa. at 675–677, 450 A.2d at 980–81.

The majority in *Lovette* rejected the Commonwealth's contention that the transportation of the defendant and his companions was a valid investigative detention pursuant to the exception to the probable cause requirement announced by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Our Supreme Court explained:

The *Terry* exception has been most frequently applied in instances involving merely an involuntary detention, see e.g. *Commonwealth v. Anderson,* 481 Pa. 292, 392 A.2d 1298 (1978); *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977); *Commonwealth v. Mimms,* 471 Pa. 546, 370 A.2d 1157 (1977); *Commonwealth v. Bailey,* 460 Pa. 498, 333 A.2d 883 (1975); *Commonwealth v. Richards,* [458 Pa. 455, 327 A.2d 63 (1974)]; *Commonwealth v.*

*Pollard,* 450 Pa. 138, 299 A.2d 233 (1973); *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). Here we have the added element of a transportation of the suspects from the place of the initial encounter without exigent circumstances to support that action. *The police had the option of detaining the suspects at the site of the initial encounter and either bringing the complainant to the site for his identification of the questioned articles or taking those items to him. Either situation would present a much stronger case for the position the Commonwealth presently urges.* The Commonwealth stresses the limited area traversed in the transportation of appellant. This fact only highlights the ease with which the identification could have been made without the movement of the suspects, which increased the intrusiveness of the encounter.

*Lovette,* 498 Pa. at 676, 450 A.2d at 980. (Emphasis added).

In the instant case, the appellees were detained *at the site of the initial encounter and not transported.* Thus, according to the majority in *Lovette,* the Commonwealth has presented a much stronger case in the instant case than was presented to our Supreme Court in *Lovette.*

■ There is no question that constitutional protections apply in the instant case. If a police officer accosts a person on the street and restrains his freedom to walk away, the officer has "seized" that person, and if the officer merely explores just the outer surface of that person's clothing there is a "search;" such search and seizure are within the purview and protection of the United States and Pennsylvania Constitutions. *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969).

■ The issue in the instant case is whether the seizure of the appellees was reasonable. The essence of state and federal constitutional provisions as to search and seizure is reasonableness. *In re Gartley,* 341 Pa.Super. 350, 491 A.2d 851 (1985). A policeman who lacks the precise level of

information necessary for probable cause is not required to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Commonwealth v. Woodard*, 307 Pa. Super. 293, 453 A.2d 358 (1982). Even in the absence of probable cause, an individual may be stopped and briefly detained, providing the investigating officer can point to specific and articulable facts which, in conjunction with the natural inferences deriving therefrom, reasonably warrant the intrusion. *Commonwealth v. Prengle*, 293 Pa.Super. 64, 437 A.2d 992 (1981); *Commonwealth v. Webster*, 291 Pa.Super. 271, 435 A.2d 1217 (1981). An investigative detention may properly ripen into an arrest based on probable cause when additional information confirming the earlier suspicions is uncovered. *See Commonwealth v. Palm*, 315 Pa.Super. 377, 462 A.2d 243 (1983).

This Court has stated that:

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [appellees]. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing."

*Commonwealth v. Mayo*, 344 Pa.Super. 336, 341–342, 496 A.2d 824, 826 (1985), *quoting United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605, 615–16 (1985) (citations omitted).[2]

 In the instant case, the police received a radio assignment "to investigate males removing property from 2138 Columbia Avenue." (N.T. 11/4/85 at 24). About two minutes later, Officer Marmien and Officer Derein arrived at the scene in separate police cars. (N.T. 11/4/85 at 9). The

2. In *Sharpe,* the Supreme Court expressly declined to adopt the Court of Appeal's *per se* rule that a 20–minute detention is too long to be justified under the *Terry* doctrine. 470 U.S. at 686, 105 S.Ct. at 1575, 84 L.Ed.2d at 615.

officers observed the appellees walking across the vacant lot behind and adjacent to the property at 2138 Columbia Avenue carrying four sheets of formica measuring four feet by eight feet. When first observed, the appellees were approximately ten to twenty feet from the fence surrounding 2138 Columbia Avenue. They were walking westward *toward* the 2200 block of Columbia Avenue. (N.T. 11/4/85 at 9–11).

The police officers stopped the appellees and asked them whether they owned the formica sheeting and where they had purchased it. The appellees responded that they had purchased it from another person *on* the 2200 block of Columbia Avenue. (N.T. 11/4/85 at 13). However, the appellants were walking towards and not away from that block. Officer Marmien then directed the appellees to sit in the police car while he went to make a quick check of the property at 2138 Columbia Avenue. At the property he discovered signs of illegal entry.[3] (N.T. 11/4/85 at 14–15). He then returned to the police car. As he returned, he was met by Barbara Smith who identified herself as the owner of the property at 2138 Columbia Avenue and as the person who had called the police. She then identified the formica boards as her property. Officer Marmien then directed the appellees to exit the police vehicle in order to handcuff the appellees and place them under arrest. Less than five minutes had elapsed since the police officers' arrival at the scene. (N.T. 11/4/85 at 15–17).

Upon review, we find no violation of the appellees' state or federal constitutional rights. It was reasonable for the police officers to question the appellees regarding the property they were transporting. Although the suppression court emphasized that the police did not receive a call that a crime *was* in progress, *see* Suppression Court Opinion at

**3.** At the suppression hearing, the Officer testified regarding the access to the property. Although not necessary to our decision, we note that at the preliminary hearing Officer Marmien testified that his initial investigation revealed that a door was off its hinges, a window was removed with its remains below it, and on the ground *outside* there were pots and cutting boards, apparently left behind. (N.T. 3/28/85 at 5).

3–4, the relevant inquiry is whether as a result of the radio assignment the officers had a reasonable suspicion that criminal activity *may* be afoot. *See Prengle, supra; see also Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982). We find that they did.

■ Although the suppression court characterized the appellees response as "plausible," [4] we find that the appellees' doubtful explanations to the officers heightened rather than allayed the officers' reasonable suspicions. The appellees' statements were in apparent conflict with the officers' observation of the appellees carrying the boards from 2138 Columbia Avenue *toward* the 2200 block of Columbia and not *away* from the 2200 block as the appellees' statements rationally implied. Thus a brief detention was warranted in order to check the premises at 2138 Columbia Avenue.[5]

As a result of this brief investigation, Officer Marmien discovered evidence of an illegal entry. Upon returning, Officer Marmien encountered Miss Smith who identified herself as the owner of Eddie's Barbeque Chicken. She then identified the formica boards as her property. At this point, probable cause clearly existed to arrest the appellees at this point.

■ The most troublesome aspect of this case is the fact that the appellees were directed to sit in one of the police cars while Officer Marmien went to Eddie's Barbeque Chicken to investigate. Officer Marmien explained that the

4. We note that the definition of "plausible" is: "seemingly true, acceptable, etc.: *often implying disbelief." Webster's New World Dictionary,* Second College Edition, at 1091 (World Publishing Co. 1978).

5. Merely because a suspect's activity may be consistent with innocent behavior does not alone make a detention and limited investigation illegal. *See United States v. Forero-Ricon,* 626 F.2d 218, 221–23 (2d Cir.1980). This is so because the reasonable suspicion standard is less stringent than the probable cause standard and permits an investigatory stop where facts within the officer's knowledge and his reasonably drawn inferences support a fair suspicion that criminal activity may be afoot. *See United States v. Veatch,* 596 F.Supp. 1327, 1331 (W.D.Pa. 1984). We note that none of the creative explanations offered on appeal to explain the conflict between the officer's observations and the appellee's doubtful statements to the officers were made to the officers at the time of the initial encounter.

appellees were directed to sit in the police car because of his concern that it was not safe for Officer Derein to guard both of the appellees without back-up while he left to investigate. (N.T. 11/4/85 at 14).

The suppression court found that by placing the appellees in the police car, the police demonstrated an intent to subject the appellees to the actual control and will of the officers. The suppression court then concluded that the appellees were therefore under "arrest" and reasoned that probable cause was required to justify this detention. We cannot agree.

While we do not approve of the use of excessive restraints upon a person subjected to investigative detentions, we note that every *Terry* stop involves both a stop and a period of detention during which the suspect is not free to leave but is subject to the control of the police officer. *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1977). In *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court stated that "the brevity of the invasion on the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justified on reasonable suspicion." Id. at 709, 103 S.Ct. at 2645. The detention in the instant case was less than five minutes, a very brief period of time.

We do not find that the brief detention in the police car transformed an otherwise proper investigative detention into an illegal arrest. The encounter occurred on a public street in the middle of the afternoon. Officer Marmien was understandably reluctant to leave Officer Derein to guard both the appellees without back-up. In order to maintain the status quo, and to ensure the safety of Officer Derein, Officer Marmien asked the appellees to sit in the police car.

In determining the reasonableness of the detention "we cannot blind ourselves to the need for law enforcement officers to protect themselves...." *Commonwealth v. Anderson, supra,* 481 Pa. at 295, 392 A.2d at 1300. Nor should we indulge in unrealistic second guessing. *Common-*

*wealth v. Mayo, supra,* 344 Pa.Superior Ct. at 342, 496 A.2d at 826. We note that the appellees were not frisked, handcuffed, or formally placed under arrest. The police did not draw their weapons nor did they transport the appellees from the scene of the encounter, thus *Lovette* does not control.

Under the circumstances, we cannot say that the officers' actions were unreasonable. Therefore, we find no violation of the appellees' state or federal constitutional rights, and no reason to suppress the evidence or statements in question.

Based upon the foregoing analysis, the suppression order is Reversed and the case is Remanded. Jurisdiction is Relinquished.