681 A.2d 778

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**William ALLEN.**

Superior Court of Pennsylvania.

Argued May 2, 1996.

Filed July 17, 1996.

Reargument Denied Sept. 19, 1996.

204

Mary L. Porto, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Karl Morgan, Philadelphia, for appellee.

Before CIRILLO, President Judge Emeritus, DEL SOLE, J. and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

This is an appeal by the Commonwealth from an order suppressing physical evidence found on appellee William Allen.[1] We reverse.

After the suppression hearing, the lower court made the following findings of fact:

On October 24, 1994 at approximately 1:25 PM Philadelphia Police Officer Kyle Bey assigned to the 22nd Police District received information from one Grixby Stevens who works with senior citizens with regard to certain drug activity.... Mr. Stevens is a retired Philadelphia Police Department lieutenant and has only formerly worked for the 22nd Police District.... Mr. Stevens was known to Officer Bey.

That Stevens informed Bey that drugs were being sold by a heavyset middle-aged male known as ... Mookie ... out of a house located at 2128 North Latona Street in Philadelphia.... Mr. Stevens further stated that Mookie is known to also carry a gun....

That Stevens told Bey that a senior citizen lives in the house in which Stevens asserted the drugs were being sold.... Stevens ... received this information from a senior citizen ... for whom he provides services.

That Stevens told Bey that the senior citizen is allowing the drugs to be sold out of her house, not by herself, but by Mookie. Stevens further stated that drugs were also being sold on the street in front of the residence.... Bey testified that the 21 hundred block of Latona Street was known as a high drug traffic area.

That Officer Bey based upon Stevens' description stated [that Mookie] was a person he had come in contact with on a prior occasion.... Bey indicated that he was familiar with

1. The Commonwealth has certified that the suppression order terminates or substantially handicaps its prosecution of appellee. As such, this appeal is proper. Pa. R.A.P. 311(d), 42 Pa.C.S.A.

the 21 hundred block of Latona Street because he and his partner had come into contact with drug sales on the street; ... Bey testified he had never made any arrests on the block.

That based upon the information acquired from Stevens[,] Bey and his partner Officer Craig Noll rode to the 21 hundred block of Latona Street and to the residence of 2128 North Latona along with Mr. Stevens.

That as the officers entered the block they observed a male whom they believed to be the [appellee], sitting on the sidewalk in a chair with his hands folded, leaning back with his head down, and his eyes appearing to be closed, outside of the property at 2128 North Latona Street.

That Officer Bey approached the [appellee] and observed a large bulge in his left pants pocket.... Bey told the [appellee] to get up and put his hands on the wall....

That Officer Bey observed a clear plastic baggie which contained off-white chunky substances inside ... the flared front pocket of the [appellee's] sweatshirt. The [appellee] was handcuffed and searched.

That upon searching the [appellee] Bey retrieved from the [appellee's] pants pocket clear and multicolored packets which contained rocklike substance also alleged to be crack-cocaine.... [T]he [appellee] was subsequently arrested....

Findings of Fact and Conclusions of Law dated May 12, 1995 at 2–5. Appellee, thereafter, moved to suppress the physical evidence seized. After presiding over a hearing on March 13, 1995, the suppression court concluded as a matter of law that the officer lacked either reasonable suspicion to conduct an investigative stop or probable cause to make an arrest. Consequently, the lower court granted appellee's motion. In this timely appeal, the Commonwealth contends that the lower court erred in granting appellee's suppression motion.

In reviewing an appeal taken by the Commonwealth from an order suppressing evidence,

[an appellate] court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom.... If the evidence supports the [suppression court's] factual findings, we may only reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Gommer,* 445 Pa.Super. 571, 573, 665 A.2d 1269, 1270 (1995) (citations omitted). The suppression court bears exclusive responsibility for assessing the credibility of witnesses and determining the weight to be accorded to their testimony. *Commonwealth v. Dorsey,* 439 Pa.Super. 494, 498, 654 A.2d 1086, 1088 (1995). Although we are bound by findings of fact which are supported by the record, we are not bound by the legal conclusions drawn from those facts. *Id.*

Fourth Amendment jurisprudence delineates three categories of interaction between citizens and the police. *Commonwealth v. Ellis,* 541 Pa. 285, 293, 662 A.2d 1043, 1047 (1995).

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention" must be supported by probable cause. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992).

*Id.* at 293–94, 662 A.2d at 1047–48 (footnote omitted). Preliminarily, we must determine whether the detaining officer

initially subjected appellee to an investigative detention or a custodial detention.

A custodial detention arises when the conditions and or duration of an investigative detention become so coercive as to be the functional equivalent of an arrest. *Commonwealth v. Douglass*, 372 Pa.Super. 227, 239, 539 A.2d 412, 418 (1988), *appeal denied*, 520 Pa. 595, 552 A.2d 250 (1988) (plurality opinion). Whether an arrest has occurred depends upon the impression conveyed to the person detained, not upon the officers' subjective intentions. *Commonwealth v. McManus*, 353 Pa.Super. 355, 359, 509 A.2d 1314, 1316 (1986). In determining whether a detention is investigative or custodial, a reviewing court considers the totality of the circumstances including

> "the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat, or use of force, and, the investigative methods used to confirm or dispel suspicion."

*Gommer*, 445 Pa.Super. at 581, 665 A.2d 1269, 1274 (quoting *Commonwealth v. Douglass*, 372 Pa.Super. at 244–45, 539 A.2d at 421) (after observing appellant driving in an erratic and dangerous manner, an off-duty officer stopped the suspect's vehicle, took possession of his keys, and briefly detained him until other officers could arrive; this did not amount to a custodial detention or arrest). *See also Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986) (suspects were not subject to a custodial detention when officers detained them in a police car for a period of five minutes to ensure the safety of one officer while the other officer investigated the crime scene; the suspects were not frisked, handcuffed or formally placed under arrest, nor did the officers draw their weapons).

In this case, Officer Bey detained appellee based on reports of drug dealing. The officer directed appellee to stand, walk about five (5) feet to a wall and place his hands

against that wall to facilitate a weapons frisk. *See White,* *supra,* 358 Pa.Super. at 128, 516 A.2d at 1215 (in assessing whether a detention is too long in duration to be justified as an investigative stop, the courts consider whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly during the time it was necessary to detain the suspect). It does not appear from the record that the officer drew a weapon while approaching appellee. Further, it is unclear whether the officer approached appellee alone or with his partner. As he was about to initiate the frisk, the officer saw the packet of cocaine in appellee's pocket. At that point, the officer handcuffed appellee and placed him under arrest. We cannot agree that the brief period of detention which occurred prior to the officer's observation of cocaine can be equated with an arrest or custodial detention. *See White,* 358 Pa.Super. at 131, 516 A.2d at 1217 (noting that every *Terry* stop involves both a stop and a period of detention during which the suspect is not free to leave but is subject to the control of the police officer).

 Assuming that the officer instead conducted an investigative detention, we must now determine whether that stop was predicated on "reasonable suspicion." " '[When] a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot' the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334, 344 (1993) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968)). "[F]or such a stop to be reasonable ..., the officer must point to specific and articulable facts 'which in conjunction with rational inferences deriving therefrom' warrant the initial stop." *Commonwealth v. Arch,* 439 Pa.Super. 606, 612, 654 A.2d 1141, 1143 (1995). We must examine the totality of the circumstances to determine whether a particularized and objective basis for suspecting an individual stopped of criminal activity exists. *Commonwealth v. Wilson,* 440 Pa.Super. 269, 275–76, 655 A.2d 557, 561 (1995),

*appeal granted,* 543 Pa. 509, 673 A.2d 864 (1996). Although the reasonable suspicion necessary to justify a *Terry* stop is less stringent than probable cause, the detaining officer must have more than a hunch as the basis for his stop. Mere presence near a high crime area or in the vicinity of a recently reported crime does not warrant a *Terry* stop. *Commonwealth v. Kearney,* 411 Pa.Super. 274, 278, 601 A.2d 346, 348 (1992).

A police officer need not personally observe the illegal or suspicious conduct which leads him or her to believe that criminal activity is afoot and that a person is armed and dangerous. *In the Interest of S.D.,* 429 Pa.Super. 576, 579, 633 A.2d 172, 174 (1993). In such cases, "we must consider 'the specificity of the description of the suspect in conjunction with how well the suspect fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed.'" *Id.* (quoting *Commonwealth v. Jackson,* 359 Pa.Super. 433, 438, 519 A.2d 427, 430 (1986)). In certain circumstances, even a very limited description may justify an investigatory stop. *Interest of S.D.,* 429 Pa.Super. at 580, 633 A.2d at 174.

In *Interest of S.D.,* a pedestrian informed an officer that two armed black men with drugs were located around the corner. Approximately fifty (50) feet away from where he had received that information, the officer saw appellant, S.D., standing with another man. No other individuals were in the vicinity. The officer immediately conducted a patdown search. The court also noted that the officer conducted the stop in an area of high drug incidence and that the encounter occurred at 5:25 in the morning. *Id.* After viewing the enumerated factors in light of the totality of the circumstances, the court ruled that the initial investigatory stop and patdown frisk of S.D. were justified. *Id.* at 581, 633 A.2d at 174.

The officer in this case was likewise justified in conducting the initial stop. A senior citizen living at 2128 North Latona Street advised a retired police officer that a

heavyset, middle-aged man named "Mookie" was selling drugs out of her house and in front of her property. "Mookie" was known to carry a gun. The retired officer so informed Officer Bey. Officer Bey testified that the name "clicked." He was familiar with an individual satisfying that description who went by the name of "Mookie." Officer Bey further described the area as a high drug area. Based on the foregoing information, Officer Bey drove toward 2128 North Latona Street.

> [In] the typical informant case, ... there exists the potential that the informant is acting out of self-interest.... [W]hen the average citizen tenders information to the police, [however], the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.

*Commonwealth v. Dennis,* 417 Pa.Super. 425, 431, 612 A.2d 1014, 1016 (1992), *appeal denied,* 535 Pa. 654, 634 A.2d 218 (1993).

When detained, about one-half hour after the officer received the report, Mookie was sitting in a chair on the sidewalk in front of the exact house the senior citizen had identified. Officer Bey noticed a bulge in appellee's pocket. After viewing the factors enumerated in light of the totality of the circumstances, we conclude that the officer's subsequent investigatory stop of appellee was supported by the requisite reasonable suspicion.

 After the officer conducted a legal stop of appellee, he was then justified in performing a protective patdown frisk. "To justify a frisk incident to an investigatory stop, the officer must point to 'specific and articulable facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase "for our own protection" becomes meaningless.'" *Interest of S.D.,* 429 Pa.Super. at 581, 633 A.2d at 175 (quoting *Commonwealth v. Patterson,* 405 Pa.Super. 17, 21, 591 A.2d 1075, 1078 (1991)). In this case, the detaining officer had been advised that the suspect carried a weapon. As such, the frisk was justified.

*See Interest of S.D.*, 429 Pa.Super. at 581, 633 A.2d at 175 (a patdown frisk incident to a lawful investigatory stop was justified when the detaining officer had been informed by an alleged eyewitness that the suspects were armed). Moreover, the officer also had a reasonable belief that appellee dealt in drugs. Our courts have taken judicial notice of the fact that drug dealers are likely to be armed and dangerous. *Patterson*, 405 Pa.Super. at 22, 591 A.2d at 1078; *Interest of S.D.*, 429 Pa.Super. at 581, 633 A.2d at 175 (an alternative basis for a patdown frisk incident to lawful investigatory stop existed because the detaining officer had a reasonable belief that the suspects were dealing drugs).

As the officer was about to begin the patdown frisk, he noticed inside the opened pouch of appellant's sweatshirt a clear plastic baggie containing off-white chunky substances in clear plastic packets. The warrantless seizure of a piece of evidence which is in plain view is permissible if the evidence is seen from a lawful vantage point and if the incriminating nature of the evidence is immediately apparent to the viewer. *Ellis*, 541 Pa. at 297, 662 A.2d at 1049. "[T]he observing officer must have probable cause to believe the evidence in question is contraband or incriminating evidence." *Id.* We must consider these factors in light of the totality of the circumstances.

We have already determined that the initial stop of appellant was premised on reasonable suspicion to believe that criminal activity was afoot. We have similarly concluded that the patdown frisk incident to the investigatory stop was also justified. Therefore, the officer viewed the plastic bag from a lawful vantage point. Further, the incriminating nature of the plastic baggie and the packets inside that baggie was immediately apparent to the seasoned officer. Consequently, we deem the warrantless seizure of that contraband permissible.

At that point, the officer handcuffed appellee and placed him under arrest. He continued to patdown appellee. After squeezing the bulge he had noticed earlier, he felt "exactly the items that were in [appellee's] sweat jacket

pocket." N.T. 3/13/95 at 15. He then retrieved from that pocket clear plastic baggies containing packets of crack cocaine.

In general, a search conducted without a warrant is presumed to be unreasonable unless justified under a recognized exception to the search warrant requirement. *Commonwealth v. Agnew*, 411 Pa.Super. 63, 74, 600 A.2d 1265, 1271 (1991). A search incident to a lawful arrest is one such exception. *Id.* After discovering a baggie filled with packets of crack cocaine on appellee's person, the officer was warranted in the belief that appellee was committing a crime and thus had probable cause to arrest appellee. Accordingly, the officer properly seized the second bag of crack cocaine packets during the search incident to a lawful arrest.

Order reversed; case remanded. Jurisdiction is not retained.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I dissent. I cannot find sufficient evidence to support a determination that the stop of Appellee was justified.

To justify a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police must have a reasonable suspicion that criminal activity is afoot. The police must be able to point to specific and articulable facts which reasonably support that suspicion. *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975). Reasonable suspicion is viewed under a totality of the circumstances test in which both the content of the officer's information and the reliability of that information are taken into account. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Where a tip is anonymous and its reliability therefore relatively low, the officer must have more information than would be required if the tip were more reliable. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). This court has held that the police must have both suspicious conduct on the part of the person detained *and* a reasonable belief of some sort of

criminal activity. *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968 (1987).

The information which Officer Bey received was second-hand. The senior citizen did not give information directly to the police. Rather, she told a retired police officer who then passed the information along to Officer Bey. The information itself was not specific; the woman stated only that a man whose description fit Appellee was selling drugs at a certain location and was known to carry a gun. Also, the only evidence of the informant's reliability is that she was a concerned citizen. See *Commonwealth v. Dennis*, 417 Pa.Super. 425, 612 A.2d 1014 (1992). Finally, there is absolutely no evidence of suspicious conduct on Appellee's part. He was merely sitting in a chair with his eyes closed, which is certainly not indicative of any criminal activity.

The majority relies primarily on *Interest of S.D.*, 429 Pa.Super. 576, 633 A.2d 172 (1993). I do not find that case to be controlling. Several factors distinguish *S.D.* from this case. In *S.D.*, the police received the information directly rather than second-hand and were only fifty feet away when the informant saw the defendant. The stop occurred at 5:25 in the morning, an unusual time to be out on the street, whereas here the stop occurred in early afternoon, a time when one might logically be expected to be sitting outside. Most importantly, however, the court in *S.D.* reversed the denial of suppression because the scope of the search exceeded that permitted by *Terry*. The entire discussion of reasonable suspicion, therefore, was not required in order to support the result in that case.

In numerous other cases, this court has held that an anonymous tip, without any suspicious conduct whatsoever and without any corroboration, is insufficient to support even a *Terry* stop. See, *e.g.*, *Interest of Barry W.*, 423 Pa.Super. 549, 621 A.2d 669 (1993) (radio call of male selling drugs; defendant saw police and fled); *Interest of S.J.*, 425 Pa.Super. 270, 624 A.2d 1068 (1993) (radio call of black female wearing red jacket, blue jeans, red sneakers and curlers in her hair selling drugs at a specific location; police only saw the woman talking

to two men). I see no reason for a different result in this case. The only information the police had was that a man answering Appellee's description was selling drugs. The officer observed no suspicious conduct; Appellee was sitting in a chair apparently napping. This does not rise to the level of a *reasonable* suspicion that criminal activity is afoot. I would affirm the trial court's order suppressing the fruits of the search.