COMMONWEALTH of Pennsylvania, Appellee,

v.

**Farion HOLT, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1998.

Filed April 3, 1998.

Ronald Keeler, Bedford, for appellant.

Thomas S. Ling, Dist. Atty., Bedford, for the Com., appellee.

Before TAMILIA, ORIE MELVIN and BROSKY, JJ.

ORIE MELVIN, Judge:

This is an appeal from the judgment of sentence. After a hearing, appellant Farion Holt's motion to suppress evidence was denied by a suppression court. Appellant was found guilty by a jury of three counts of Violation of the Controlled Substance, Drug, Device and Cosmetic Act and one count of criminal conspiracy.[1] Specifically the drug violations were for Possession of a controlled substance (cocaine),[2] Possession with Intent to Deliver (cocaine),[3] and Possession of a controlled substance (marijuana).[4] The criminal conspiracy count charged that appellant conspired with Willie Day III to possess cocaine with the intent to deliver. Appellant was sentenced to an aggregate period of incarceration of not less than four and one-half (4-½) nor more than nine (9) years.

On appeal, the defense raises five allegations of error. First, he claims that the trial court erred in denying appellant's request for dismissal of the charges when the Commonwealth failed to respond to the Bill of Particulars. Second, appellant alleges that the trial court erred in denying the defense's Motion to Suppress. Third, appellant argues that the evidence was insufficient to support the finding of constructive possession. Fourth, appellant argues that the evidence was insufficient to support the conviction of criminal conspiracy. And fifth, the appellant alleges that the jury's verdict was against the weight and sufficiency of the evidence. We do not agree and affirm the trial court.

Appellant's first complaint is that the trial court erred in denying his Motion to Dismiss because a bill of particulars was never furnished as requested by the appellant. Considering the procedural history of this case, we do not agree that any sanction, let alone such a harsh one as dismissal of the charges, is warranted here. The purpose of a bill of particulars is to give notice to the accused of offenses charged in the Information so as to allow him to prepare for trial and to avoid surprise. *Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783 (1996). While the District Attorney denies receiving a copy of the bill of particulars, a time stamped copy is included in the certified record showing that it was filed on July 19, 1996 along with a letter request for discovery.[5] In response to the requested discov-

---

1. 18 Pa. Cons.Stat. Ann. § 903(a)(1) (West 1983).

2. Pa. Stat. Ann. tit. 35, § 780–113 §§ A16 (West 1993).

3. Pa. Stat. Ann. tit. 35, § 780–113 §§ A30 (West 1993).

4. Pa. Stat. Ann. tit. 35, § 780–113 §§ A16 (West 1993).

5. Appellee properly questions why appellant did not follow-up on his request for Bill of Particulars until the eve of trial. However, we need not reach this issue.

ery, the Commonwealth provided the police reports. In addition, appellant received the benefit of all of the evidence at a suppression hearing held on November 20, 1996. Our review of the transcripts reveals that all of the testimony that was eventually presented at trial was presented at the suppression hearing. Thus, appellant not only had the information in advance of trial, he also had an opportunity to cross-examine the witnesses.

Furthermore, the defense fails to specifically point out what evidence they did not receive and how they were prejudiced by not having it. Instead, appellant makes the bald allegation that he did not get everything he requested, and if he had, he might have been better prepared to defend. Thus, we find no demonstration of prejudice or surprise to the defense for not having any specific evidence. Because we believe appellant received sufficient notice of the offenses charged and substantially all of the evidence in the possession of the Commonwealth, we find that the trial court properly denied the motion to dismiss.

In the next issue raised by the appellant, he claims that the trial court erred by denying the motion to suppress the evidence found in the search of the small brown tweed bag that appellant had at his feet. While the appellant admits in his brief that he consented to the search, without specifically stating it, appellant is now arguing that the consent was involuntary because of the fact that he was approached by two Drug Task Force Agents while he was inside the close confines of the bus, they were uniformed and they were allegedly crowding him when they asked to search his bag. However, the uncontroverted facts presented at the hearing showed that the agents were not in uniform, did not crowd appellant, left the aisle open, left the bus door open and did not delay the bus' departure in any way. Appellant did not testify, either at the suppression hearing or at trial, to contradict the Commonwealth's evidence that this was merely an encounter.

We have recently reiterated the standard of review of a suppression court ruling in *Commonwealth v. Vasquez*, 703 A.2d 25, 30 (Pa.Super.1997) where we stated:

When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous. *Commonwealth v. D'Amato*, 514 Pa. 471, 482, 526 A.2d 300 (1987). Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435, 438 n. 5 (1975).

*citing Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023, 1028 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990).

In the present case, the defense never presented any witnesses or testimony. Therefore, we only have the evidence as presented by the Commonwealth to consider. In addition, on December 10, 1996, the suppression court filed an extensive statement that included findings of fact and conclusions of law. In that statement, the suppression court held that neither appellant nor Mr. Day were seized under the Fourth Amendment of the U.S. Constitution and/or Article 1 of the Pennsylvania Constitution. The suppression court also found that under the circumstances, a reasonable person would have concluded that he was able to decline the agents' requests and end the encounter with the police. Therefore, the suppression court found that the search of the small tweed bag was voluntarily and intelligently consented to by appellant. While we do not agree with the trial court's basis for permitting the search, we do agree with the court's result that the evidence should not be suppressed.

It is important at this point to understand the facts presented at the suppression hearing. Ronald Paret, a narcotics agent with

the Pennsylvania Attorney General's Office testified that on June 20, 1996 he was in Breezewood, Bedford County, at a bus terminal rest stop conducting a drug interdiction operation. At approximately 7:40 a.m., Agent Paret observed the appellant, Farion Holt, a passenger on a Greyhound Lines bus that had originated in New York City at approximately 12:30 a.m. that same day. Agent Paret observed each of the fifteen to twenty passengers as they exited the bus; and he noticed the appellant depart the bus with another individual, later identified as Willie Day. The men watched Agent Paret and continued to look over their shoulders at Agent Paret several times as they walked from the bus to the restaurant, turning their heads to keep an eye on him. It was Agent Paret's testimony that he found this behavior to be suspicious because no other passengers were concerned with his presence except these two men.

Agent Paret testified that after both men were in the restaurant together for about ten minutes, appellant exited the restaurant to smoke a cigarette. He saw Mr. Day leave the restaurant alone with a large green carry-on bag and a Styrofoam food container. Agent Paret then saw Mr. Day board the bus, leave the articles on a seat in the back of the bus and leave the bus. In the meantime, appellant re-boarded the bus. He had nothing in his hands when he left the bus and nothing when he returned. At that point Agent Paret and Agent Nastari boarded the bus. They were wearing windbreaker type jackets that identified them as Pennsylvania State Attorney General Agents. They were armed, but their weapons were concealed under their jackets. After speaking to another passenger, the agents spoke to the appellant. They identified themselves and in the course of their conversation, the agents asked if they could see appellant's bus ticket. Agent Paret stood behind appellant's seat. The aisle was open and the door to the bus remained open. Agent Nastari stood one seat in front of the appellant's seat but on the opposite side of the bus. From the ticket appellant produced, Agent Paret learned that the trip originated in Indianapolis and took eighteen hours to reach New York City. The ticket also revealed a return trip after an eight-hour stay. Appellant was on his way back to Indianapolis, another eighteen hour trip, when the bus made this lay-over in Breezewood, Bedford County. Moreover, the agent noticed that the ticket was paid for in cash and issued in the name of "T. Rice." When asked if he had any identification, the appellant produced a state issued identification card bearing the name "Holt." The agent asked the appellant his name to which he replied, "Farion Holt." When asked why the name on the ticket differed from his, the appellant stated that his cousin had purchased the ticket. At that point the agent noticed a small brown tweed carry-on bag that was at appellant's feet. Appellant advised the agents that this was the only piece of luggage he had. The agent asked if appellant would allow him to search the bag for narcotics. The appellant bent down and handed the bag to the agent. Agent Paret handed the bag to Agent Nastari who conducted the search. In the bag, the agent discovered six small zip-loc bags with little smiley face stickers on each bag. The material in the bags was tested and determined to be marijuana.

In the meantime while Agent Paret was talking to the appellant, Mr. Willie Day re-boarded the bus. This time, he took a seat directly across the aisle from appellant Holt, but not the same seat where he had left the green bag minutes earlier. Agent Paret identified himself to Mr. Day and requested permission to examine his bus ticket. Mr. Day's ticket was identical to appellant's ticket, including the time it was purchased, the travel itinerary, and the name of the purchaser, "Rice." When asked for identification, Mr. Day produced a driver's license with the name, "Willie Day." When asked if he had baggage, he denied having any.

Agent Paret testified that the aisle was not blocked in anyway and the bus door remained open. In addition, he testified that although he had told the driver that they were boarding the bus to talk to passengers, the agents did not ask the driver to delay or extend the layover. Agent Paret specifically testified that he never told the driver not to leave or to wait for them to finish their conversations with the passengers.

Agent Paret went to the back of the bus where the large green carry-on bag was and lifted it in the air. He asked that the owner of the bag please identify himself. When all of the passengers had re-boarded and no one came forward to claim the bag, Agent Paret searched the bag and found over twenty four hundred grams of cocaine and twelve Ziploc bags of marijuana; six of which had the identical smiley face stickers as the ones recovered from appellant's brown tweed carry-on bag. Agent Paret estimated that the street value of the cocaine found in the large green carry-on bag was approximately $250,-000.00.

We are mindful of the recent trend in drug interdiction cases. In *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619 (1994), our supreme court considered the use of a "drug courier profile" as a law enforcement technique. They stated that:

> The danger inherent in defining reasonable suspicion in the context of a "drug courier profile" is that the police officer's suspicion is not aroused by personal observation of an individual whose behavior sets him apart from other travelers.... A drug courier profile should serve only as a starting point of, and not as a substitute for, independent observation of an individual's behavior.

*Id.* 636 A.2d at 624. In the *Lewis* case, four officers identified themselves as narcotics agents working an interdiction program checking for couriers bringing drugs back from New York. The appellants in that case backed away from the officers, and the officers followed. The officers eventually backed the suspects up against a wall with a bench in front of it. After extensive questioning, the officers searched the two suspects. Even though nothing was found on the first suspect, the officers continued to search the second man and found a pistol. They were both arrested and at the station, the first suspect was found to have cocaine in his sock. Although the trial court denied the suppression and we affirmed the trial court, our supreme court reversed by holding that the stop was investigatory and was not supported by reasonable suspicion or probable cause in violation of the Fourth Amendment

of the U.S. Constitution and Article I, § 8 of the Pennsylvania Constitution.

Most recently, in *Commonwealth v. Allen*, 452 Pa.Super. 200, 681 A.2d 778 (1996), we defined the three different circumstances that a citizen may find himself in when approached by a law enforcement agent. A citizen is entitled to certain constitutional guarantees under each situation. They are as follows:

> [A mere encounter] need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. [An investigative detention] must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. [A custodial detention (or arrest)] must be supported by probable cause.

*Id.* 681 A.2d at 782. As we have said on numerous occasions, not all encounters between citizens and the police are so intrusive as to trigger the protections provided by the Constitution. Certainly, the police can approach a person on a public street and engage in conversation. The turning point comes "only if, in viewing all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *See In the Interest of Jermaine*, 399 Pa.Super. 503, 582 A.2d 1058, 1060 (1990) quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988). The factors to be considered include "whether the officer makes a show of authority, or exercises force, the officer's demeanor and manner of expression, the location, and the content of any interrogatories or statements..." 582 A.2d at 1060. (additional cites omitted.)

With these rulings in mind, and the holding in *Commonwealth v. Vasquez, supra,* we are compelled to find that the encounter between appellant and Agent Paret was investigatory, and as such, it must be supported by reasonable suspicion to survive a challenge. Considering the facts as presented during the suppression hearing, it appears that the search of the small brown tweed bag occurred during an "investigative detention."

Because there was reasonable suspicion that criminal activity was afoot, we affirm the suppression court's result. We note that the instant facts are distinguishable from those in *Vasquez*. While both cases involve drug interdiction programs conducted at bus terminals, Madeline Vasquez displayed absolutely no suspicious behavior and really did not even meet the drug courier profile. The agent's contact with Ms. Vasquez was not a mere encounter but rather an investigatory stop with no reasonable suspicion.

In the present case, Agent Paret testified that when he first observed the appellant, he was exiting the bus with Mr. Day. The men watched the Agent turning their heads to keep an eye on him. Agent Paret testified that he found this behavior to be suspicious because no other passengers were concerned with his presence. During the rest stop, the men continued to act as if they were alone by exiting the restaurant separately. Mr. Day re-boarded the bus, left his bag on a seat in the back and when he saw the Agent approach the appellant, he took a different seat away from the green bag. Certainly, Agent Paret can engage the appellant in conversation, but when he discovers that the appellant had just been on an eighteen-hour trip to New York, stayed for eight hours and was on another eighteen-hour trip home, more suspicion is aroused. The final straw is when the agent realizes that appellant's bus ticket is under a different name. The standard set in *Commonwealth v. Lewis, supra,* is met. Clearly, the agent's suspicion is aroused by personal observation, and appellant's behavior has set him apart from the other travelers on the bus.

Appellant captions his third argument by stating that the Commonwealth's evidence was insufficient to support a finding of constructive possession of the large green carry-on bag that contained the cocaine. Apparently he is challenging his conviction of possession with intent to deliver the cocaine found in Mr. Day's bag. Appellant confuses his argument with his other theory that the large green carry-on bag was left by Mr. Day as the result of forced abandonment.

 This Court does not need to address the issue of constructive possession because the appellant's conviction for possession with intent to deliver the drugs found in the green bag stemmed from his conviction for criminal conspiracy. In other words, when the appellant was convicted of conspiracy to possess with intent to deliver the drugs in the green bag, he is also culpable for the crime itself, that is possession with intent to deliver cocaine. The suppression court found the search of the green carry-on to be permissible because it determined that the green bag was abandoned by Mr. Day, and the abandonment was not coerced by the police contact. Again, while we do not adopt the suppression court's reasoning, we will not disturb the suppression court's result in light of the discussion above. Agent Paret knew that Mr. Day was traveling with the appellant, that both men had identical tickets and had spent at least the last thirty hours together. He observed the suspicious behavior of Mr. Day and knew he had left the green bag on a seat in the back of the bus and took another seat away from it. Most of all, he had just found drugs in appellant's bag. Under these circumstances, we find that clearly there was reasonable suspicion to search the green carry-on bag.

 Next, the appellant argues that the evidence was insufficient to support a conviction for criminal conspiracy. In ruling on sufficiency of the evidence claims, the Court must determine whether the Commonwealth's evidence and all reasonable inferences arising therefrom are sufficient to support a finding that the defendant was guilty beyond a reasonable doubt. *Commonwealth v. Soto,* 437 Pa.Super. 442, 650 A.2d 108 (1994). On the first charge of possession, the marijuana was found in the appellant's small brown tweed bag. More marijuana, identically packaged, was found with the cocaine in Mr. Day's large green carry-on bag. The additional testimony offered at trial from Lieutenant Hummel of the State Attorney General's Drug Task Force established that appellant was observed in the terminal walking behind Mr. Day, careful not to appear to be with him. He saw appellant and Mr. Day have a conversation together. They had identical bus tickets with the same itinerary and the same purchaser.

Lieutenant Hummel further testified at trial that it was his impression that the men knew each other and were trying to stay apart. He saw that Mr. Day had a large green carry-on bag at his feet. After both men were in the restaurant together for about ten minutes, appellant exited the restaurant to smoke a cigarette. He also saw Mr. Day leave the restaurant alone with the large green carry-on bag and a Styrofoam food container. This testimony corroborated Agent Paret's and was basically cumulative. Looking at the totality of the circumstances and the evidence in the light most favorable to the verdict winner, we find that the evidence was sufficient to sustain a conviction for conspiracy.

 Finally, the appellant argues that the jury verdicts were against "the weight and sufficiency of the evidence." Appellant's argument confuses two different issues. In arguing that the verdict is against the weight of the evidence, appellant concedes that there is sufficient evidence to sustain the verdicts. *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984). When reviewing a jury verdict, we must view the evidence in the light most favorable to the Commonwealth as the verdict winner, accept as true all evidence and the reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). Viewing the entire record in the light most favorable to the Commonwealth, as discussed above, we find that there was sufficient evidence to establish conspiracy.

Judgment of sentence affirmed.