COMMONWEALTH of Pennsylvania,
Appellee,

v.

Jose Luis ROMAN, Appellant.

Superior Court of Pennsylvania.

Argued March 11, 1998.

Filed June 22, 1998.

MaryJean Glick, Lancaster, for appellant.

Michael W. Chorazy, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before TAMILIA, ORIE MELVIN and BECK, JJ.

ORIE MELVIN, Judge.

This is a direct appeal from the judgment of sentence from two separate convictions. The first, at Criminal No. 1941 of 1996, was for loitering and prowling [1] and propulsion of missiles.[2] The second, at Criminal No. 1545 of 1996, was for receiving stolen property (RSP).[3] Appellant, Jose Luis Roman argues in the first conviction that an egg is not a deadly or dangerous missile such that his conviction for propulsion of missiles should be reversed. As to the second conviction, the appellant contends that the trial court erred by denying his motion to suppress claiming that the evidence was the result of an illegal detention. We disagree and affirm the judgment of sentence.

The facts and procedural history of these cases can be summarized as follows. During the trial on the first charge, the arresting officer, Sergeant Eric Stewart testified that on March 16, 1996, he was traveling in a marked patrol car when the lower right-hand corner of his windshield was struck by a raw egg. Although Sergeant Stewart's vision was not obscured, the impact caused him to immediately brake his vehicle. When he investigated, Sergeant Stewart saw two individuals on a rooftop throwing eggs. He identified Mr. Roman as one of the perpetrators. As a result of this incident, Mr. Roman was charged with loitering and prowling and propulsion of missiles onto a vehicle.

On April 22, 1996, the arresting officer, Officer Timothy Ponessa was dispatched in response to a call reporting two individuals on a bicycle that was believed to be stolen. The uniformed officer stopped Mr. Roman and asked if the bike belonged to him. When Mr. Roman responded that it did, Officer Ponessa asked where he got it. Mr. Roman replied that he bought the bike from his cousin for $70. Upon request, Mr. Roman agreed to allow Officer Ponessa to check the serial number. From the number, Officer Ponessa determined that the bike had been reported stolen. When Mr. Roman was arrested and given Miranda warnings, he gave a different version of how he got the bike; he said he bought it off the street two weeks earlier for $40.

■ A suppression hearing was held on the RSP case; the motion was denied, and Mr. Roman proceeded non-jury. At trial during cross-examination, Officer Ponessa produced an initial police report that had not been provided to the defense in discovery.[4] The report stated the reason for the dispatch and the name and address of the caller who reported that Mr. Roman was observed on the stolen bike. Mr. Roman was convicted, and a pre-sentence report was ordered. On

1. 18 Pa.C.S.A. § 5506.

2. 18 Pa.C.S.A. § 2707.

3. 18 Pa.C.S.A. § 3925.

4. In the appellant's Statement of Matters Complained of on Appeal, counsel alleges that the Commonwealth failed to provide this report in discovery. Because we did not consider the contents of the report in disposing of the suppression issue, this alleged violation of Rule 305 of the Pa. R.Crim.P. has no effect on our discussion. Furthermore, appellant admits in his brief that the court has broad discretion in determining sanctions for discovery violations. *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995). Since defense counsel had this report during the suppression hearing and cannot point to any specific prejudice or explain what they would have done had they had the report earlier, we find no abuse of discretion. Moreover, Mr. Roman has failed to set forth this issue in his Statement of Questions pursuant to Pa. R.A.P. 2116(a). Questions not presented are waived. *Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 614 A.2d 699 (1992).

the same day, Mr. Roman was tried on the propulsion of missiles case and convicted.

Mr. Roman was sentenced to five years probation and fined $1,000 on the RSP conviction. He received one year probation consecutive to the sentence imposed for RSP and was fined an additional $500 for loitering and prowling. For his conviction of propulsion of missiles, the trial court imposed a sentence of five years probation consecutive to the sentence imposed for loitering and prowling and fined him another $1,000.

In this appeal, Mr. Roman first argues that the trial court erred in denying the suppression of physical evidence and the statements because he claims that Officer Ponessa did not have reasonable suspicion or probable cause to stop. We have recently reiterated the standard of review of a suppression court ruling in *Commonwealth v. Vasquez*, 703 A.2d 25, 30 (Pa.Super.1997) where we stated:

> When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous. *Commonwealth v. D'Amato*, 514 Pa. 471, 482, 526 A.2d 300 (1987). Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435, 438 n. 5 (1975).

*citing Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023, 1028 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990).

The suppression court filed an extensive Memorandum of Opinion that included the court's reasoning and cited supporting facts in the record. In that opinion, the suppres-

sion court held that the police officer had reasonable suspicion to stop and ·question Mr. Roman. As to the pre-arrest statements, the court held that Mr. Roman was not detained in any manner or told that he was not free to leave. As to post-arrest statements, the suppression court was satisfied that Officer Ponessa properly advised Mr. Roman of his Miranda rights, and Mr. Roman made a knowing and uncoerced decision to cooperate with the police.

■ Recently, in *Commonwealth v. Holt*, 711 A.2d 1011 (Pa.Super. 1998), we explained that there are three different circumstances that a citizen may find himself in when approached by a law enforcement agent. A citizen is entitled to certain constitutional guarantees under each situation. They are as follows:

> [A mere encounter] need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. [An investigative detention] must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. [A custodial detention (or arrest)] must be supported by probable cause.

*Id.* at 1016. As we have said on numerous occasions, not all encounters between citizens and the police are so intrusive as to trigger the protections provided by the Constitution. Certainly, the police can approach a person on a public street and engage in conversation. The turning point comes "only if, in viewing all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *In the Interest of Jermaine*, 399 Pa.Super. 503, 582 A.2d 1058, 1060 (1990) quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988). The factors to be considered include "whether the officer makes a show of authority, or exercises force, the officer's demeanor and manner of expression, the location, and the content of any interrogatories or statements ..." 582 A.2d at 1060. (citations omitted).

With these rulings in mind, and the holding in *Commonwealth v. Holt, supra,* we are compelled to find that the encounter between Mr. Roman and Officer Ponessa was investigatory, and as such, it must be supported by reasonable suspicion to survive a challenge. Since the defense never presented any witnesses or testimony, we only have the evidence as presented by the Commonwealth before us. Considering the facts as presented during the suppression hearing and the totality of the circumstances, it appears that the questioning occurred during an "investigative detention." Within minutes from the time the police received the tip that two individuals were on a stolen bike in a specific location, Officer Ponessa saw two individuals on a bike in that same location. After merely asking Mr. Roman some nonintrusive questions, such as the serial number, Officer Ponessa learned that the bike was stolen. Mr. Roman then offered an inconsistent story as to the seller and the cost of the bike he claimed to have purchased two weeks prior. The questions were preliminary, and Mr. Roman was never restrained. Because there was reasonable suspicion that criminal activity was afoot, we find that Mr. Roman's rights were not violated and affirm the court's denial of the motion to suppress.

As to the propulsion of missiles conviction, Mr. Roman argues that the trial court erred in determining that an egg is a dangerous or deadly missile when thrown from the roof of a building at the windshield of a vehicle within the meaning of 18 Pa.C.S.A. § 2707(a). According to the Pennsylvania Supreme Court case of *Commonwealth v. McCullum,* 529 Pa. 117, 602 A.2d 313 (1992), what constitutes a "dangerous weapon" depends not on the nature of the object itself, but on its capacity given the manner of its use, to endanger life or inflict great bodily harm. *McCullum* further relied on *Commonwealth v. Pepperman,* 353 Pa. 373, 45 A.2d 35 (1946), in which the Pennsylvania Supreme Court held that even a bedroom slipper can constitute a dangerous or deadly weapon. Because of the considerable force that was exerted with the bedroom slipper in beating a man, the court in *Pepperman* labeled it as a deadly weapon.

Like a bedroom slipper, an egg is not inherently dangerous, but the manner in which it was used made it a dangerous missile within the meaning of 18 Pa.C.S.A. § 2707(a). In this case, Mr. Roman threw the raw egg from a rooftop. The force and momentum behind the egg created from throwing it from that height and distance transformed it into a dangerous missile.

Furthermore, we note that the Propulsion of Missiles statute lists a stone as a dangerous and deadly missile. 18 Pa.C.S.A. § 2707(a). A stone may bounce right off of a vehicle or when thrown from a rooftop, could crack the windshield and enter the vehicle, as could an egg. But when thrown at an occupied vehicle, an egg is even more dangerous than a stone because it could splatter on the windshield leaving the driver with little or no visibility because of the opaque effect. We find that when an egg is thrown from the roof of a building at the windshield of a vehicle, it is a deadly or dangerous missile within the meaning of 18 Pa.C.S.A. § 2707(a).

Judgment of sentence affirmed.