COMMONWEALTH of Pennsylvania,
Appellee

v.

Gary WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Submitted May 4, 2009.

Filed Sept. 4, 2009.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

BEFORE: KLEIN, BENDER and CLELAND, JJ.

OPINION BY BENDER, J.:

¶ 1 Gary Williams (Appellant) appeals the judgment of sentence imposed following his convictions for three violations of the Uniform Firearms Act, specifically, Persons Not to Possess Firearms, Firearms Not to be Carried Without a License, and Carrying Firearms on Public Streets in Philadelphia. *See* 18 Pa.C.S. §§ 6105, 6106, and 6108. Appellant challenges the trial court's refusal to suppress certain evidence seized following his arrest, contending that the police stopped him without reasonable suspicion. Appellant also asserts that it was erroneous for the trial court to impose two consecutive terms of incarceration for offenses that should have merged for the purposes of sentencing. We find no merit in Appellant's claims, and therefore affirm the judgment of sentence.

¶ 2 The trial court summarized the facts of this case as follows:

At the hearing on Appellant's motion to suppress, the Commonwealth presented the testimony of Philadelphia Police Officer, Sean McGinnis. On March 31, 2007, at approximately 7:11 p.m., Officer McGinnis was on routine patrol when he received a radio call advising of a robbery in progress at the intersection of Front and Venango Street, in the city and county of Philadelphia, Pennsylvania. Arriving at the location, Officer McGinnis observed Appellant walking northbound on Front Street "with two female officers behind him walking, trying to catch up." He also encountered a Hispanic male [ ]pointing up to the [Appellant] yelling. "He has got a gun."

Appellant turned the corner on Front Street and now was walking eastbound on Venango Street. At this point, Officer McGinnis pulled his patrol car about 15 feet in front of Appellant, while the two aforementioned female officers gave Appellant "verbal commands." Appellant initially appeared to comply with the officers' "verbal commands," by placing his hands up against an adjacent wall, but he then "broke loose from the two ... officers and ran southbound."

Pursuing on foot, Officer McGinnis observed Appellant "clutching the right side of his waist" throughout the entire chase. Several blocks away, Appellant eventually was cut-off by a marked police vehicle, at which point Officer McGinnis observed him retrieve a black handgun from his waistband and toss the same into a "fenced lot area." The officers then apprehended Appellant and Officer McGinnis recovered the firearm, which was a 9 millimeter, loaded, handgun.

This court denied Appellant's suppression motion. At the ensuing trial, the Commonwealth presented a ballistics report indicating that the firearm was operable, and a certificate of Non–Licensor indicating that Appellant lacked a valid license to carry the same.

Appellant also testified, claiming that he was standing in the area of Front and Venango Street when he observed a patrol car at a traffic light. Because he was smoking marijuana at the time, Appellant wanted to avoid the police and therefore "walked down the street." Appellant testified that no officer ever

instructed him to stop, and that he simply "dropped the marijuana and ... turned around and went the other way." As the officers approached, Appellant ran, but stopped after an officer "pulled his gun on me and told me to get down." Appellant further testified that he never had a gun on him.

Trial Court Opinion (T.C.O.), 12/18/08, at 2–7 (citations omitted). Following a bench trial, the court found Appellant guilty of violating sections 6105, 6106, and 6108 of the Uniform Firearms Act, and sentenced him to five to ten years' incarceration for the section 6105 violation, followed by a term of four years' probation for the section 6106 violation. No further penalty was imposed for the section 6108 violation. Appellant then filed this appeal from the judgment of sentence raising three questions for our review:

1. Did not the trial court err in denying Appellant's motion to suppress inasmuch as the evidence was insufficient to establish reasonable suspicion either that there was criminal activity afoot involving Appellant or that Appellant was armed and dangerous so as to permit a frisk and any evidence from Appellant's subsequent flight was inadmissible?

2. Did not the trial court err in sentencing Appellant to consecutive sentences for a single criminal act in violation of his right not "to be twice put in jeopardy of life and limb"?

3. Should not this Court grant relief on Appellant's claim that [Appellant received an illegal sentence [1]], as Appellate counsel was facially ineffective for failing to include this meritorious issue in her 1925(b) statement?

Brief for Appellant at 3.

■■■ ¶ 3 In reviewing a trial court's denial of a motion to suppress physical evidence, this Court must determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease,* 750 A.2d 320, 323 (Pa.Super.2000). In so doing, we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon,* 798 A.2d 761, 765 (Pa.Super.2002). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease,* 750 A.2d at 323–24.

¶ 4 Appellant argues that at the time he was detained, the facts and circumstances available to the police were insufficient to establish reasonable suspicion so as to justify an investigatory stop and frisk of his person. Brief for Appellant at 7. Appellant further contends that the gun which he subsequently discarded should therefore have been suppressed because it was seized as the result of an illegal detention. *Id.* We disagree.

■■ ¶ 5 Preliminarily, Appellant argues that he was detained by the two female officers pursuing him on foot, and that because those officers did not testify at the suppression hearing, there was no basis for the court to evaluate whether they had the requisite level of suspicion to stop him.

---

**1.** In the Statement of Questions Presented for this Court's review, Appellant's counsel erroneously discusses a conviction for conspiracy. It is clear from the record that conspiracy was not at issue in this case as Appellant alone was involved and convicted of violating various provisions of the Uniform Firearms Act.

Brief for Appellant at 9. However, the Commonwealth argues that this issue is waived because it was not raised at the suppression hearing. Pursuant to the Rules of Appellate Procedure, Appellant must specify where in the record this issue was preserved. *See* Pa.R.A.P. 2117(c) and 2119(e). In his brief, Appellant does not indicate where the issue was preserved in the trial court, nor does he even allege that he raised the issue at the suppression hearing. Consequently, we are constrained to deem this issue waived. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

■■ ¶ 6 In the alternative, Appellant contends that when he encountered Officer McGinnis, the requisite level of suspicion had still not been attained, and that the stop was therefore illegal. Brief for Appellant at 9. This Court has previously delineated three categories of interaction between citizens and the police. *See Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047 (1995).

> The first of these is a "mere encounter" ... which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Allen*, 452 Pa.Super. 200, 681 A.2d 778, 782 (1996) (citations omitted). The test for determining wheth-er an investigative detention has occurred is whether "under the totality of the circumstances, the police conduct would have communicated to a reasonable person that the person was not free to leave." *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619, 623 (1994). In the instant case, we conclude that at the point Officer McGinnis stopped Appellant, a reasonable person in the same position would not have felt free to leave; therefore, at that point, an investigative detention had occurred.

■ ¶ 7 In order to justify an investigative detention, "the police must have reasonable suspicion that criminal activity is afoot. Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances ... viewed through the eyes of a trained police officer[.]" *Commonwealth v. Johnson*, 734 A.2d 864, 869 (Pa.Super.1999). Here, Officer McGinnis had just received a radio call advising of a robbery in progress, observed Appellant in the immediate vicinity of the reported robbery attempting to avoid two female officers who were approaching him on foot, and encountered a witness who was pointing at Appellant yelling, "He has got a gun." N.T., 4/1/2008, at 7.

¶ 8 Appellant argues that the witness' statement, "He has got a gun" is the equivalent of an uncorroborated, anonymous tip, and is insufficient to establish reasonable suspicion justifying an investigatory stop. Brief for Appellant at 10. We disagree. Each of the cases cited by Appellant on this point[2] involve anonymous phone calls to the police regarding criminal activity. The situation here, however, is distinguishable in that the tip was

---

2. In his brief, Appellant cites *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997); *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997); and *Commonwealth v. Kue*, 547 Pa. 668, 692 A.2d 1076 (1997).

made in person, giving Officer McGinnis an opportunity to observe the witness' demeanor and assess his credibility in light of his past experience with investigating crimes. Such a tip must be given more weight than a mere anonymous phone call because "a person who knowingly gives false information to any law enforcement officer with intent to implicate another" may be held criminally liable. 18 Pa.C.S. § 4906; *see Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (officer was justified in making an investigative stop when informed on the street that the defendant was carrying narcotics and a gun by an informant subject to prosecution for making a false report). Moreover, the tip tended to corroborate the radio call regarding a robbery in progress, and it is well-established that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). We therefore conclude that taken together, the facts and circumstances within Officer McGinnis' knowledge gave rise to a reasonable suspicion that Appellant may be involved in criminal activity, thus justifying his detention.

¶ 9 In addition, Appellant contends that the gun should have been suppressed because the police lacked the additional level of suspicion required to frisk for weapons. *See Commonwealth v. Myers,* 728 A.2d 960, 963 (Pa.Super.1999) ("[t]o justify a frisk incident to an investigatory stop, the police need to point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous[ ]"). However, the gun Appellant sought to suppress was not obtained by a frisk of his person, but rather was discovered on the ground after Appellant discarded it during his flight from the police.

Therefore, it is irrelevant whether the police believed that Appellant was armed and dangerous so as to justify a frisk for weapons.

¶ 10 Based on the foregoing, it is clear that the situation presented Officer McGinnis with sufficient information to form a reasonable suspicion so as to justify the investigative detention of Appellant. Because we have determined that the gun was recovered as a result of this lawful detention rather than an illegal frisk for weapons, Appellant's suppression motion was properly denied.

■■■■ ¶ 11 We now consider Appellant's second argument that his aggregate sentence was erroneous because the two offenses for which he was sentenced (18 Pa.C.S. §§ 6105, 6106) should have merged. Brief for Appellant at 11–17. Appellant also contends in his third argument that this issue should not be waived despite having not been raised in his Rule 1925(b) statement nor appearing in the trial court opinion. In an effort to avoid any potential waiver, present counsel accuses herself of providing ineffective assistance by omitting it. Brief for Appellant at 18–19. We agree that the issue raised in Appellant's second argument cannot be waived, because "merger is a nonwaivable challenge to the legality of the sentence." *Commonwealth v. Robinson,* 931 A.2d 15, 25 (Pa.Super.2007). An assertion that the trial court erroneously imposed an illegal sentence is a question of law and, as such, our scope of review is plenary and our standard of review is de novo. *See Stilp v. Commonwealth,* 588 Pa. 539, 905 A.2d 918, 930 (2006).

¶ 12 As a preliminary matter, we note that merger claims have their root in the Double Jeopardy Clause of the United States Constitution, and that we are guid-

ed in this area by 42 Pa.C.S. § 9765, which states:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

¶ 13 In asserting that his sentences should have merged, Appellant relies on the reasoning in *Commonwealth v. Jones,* 590 Pa. 356, 912 A.2d 815 (2006) (discussing whether the crimes of burglary and criminal trespass should merge for sentencing purposes). Brief for Appellant at 13. Appellant sites *Jones* for the proposition that "in a situation where the crimes, as statutorily defined, each have an element not included in the other but the same narrow fact satisfies both of the different elements, the lesser crime merges into the greater-inclusive offense for sentencing." *Jones,* 912 A.2d at 821. However, in *Jones,* Justice Saylor concurred, noting that

> the Legislature has now evinced an intent in Section 9765 ... to require a pure statutory elements approach to sentencing merger. Since, however, the enactment of Section 9765 postdates Appellant's offenses in this case, I do not believe that it need necessarily be applied here.

*Id.* at 372, 912 A.2d 815. Thus, the reasoning relied on by Appellant is non-binding and is distinguishable from the case at hand in that the crimes for which Appellant has been convicted occurred after the enactment of section 9765.

¶ 14 The more relevant precedent here is *Commonwealth v. Williams,* 920 A.2d 887 (Pa.Super.2007), where this Court considered whether the exact offenses at issue in the present case (18 Pa.C.S. §§ 6105, 6106) should merge. In holding that the two offenses do not merge, this Court adopted a much more strict application of section 9765, or the "elements" approach. *Id.* at 891. Analyzing Appellant's claim in light of this standard, we find the sentence imposed by the trial court to be legal.

¶ 15 As previously noted, the statutory requirement for merger mandates that all of the elements of one offense be included in the statutory elements of the other offense. 42 Pa.C.S. § 9765. The two offenses presently at issue read in relevant part as follows:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.—**

(1) A person who has been convicted of an [enumerated offense] ... shall not possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

**§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.—**

(1) [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

¶ 16 Applying the approach adopted in *Williams,* the sentences would not merge:

> § 6105(a) contains a statutory element that § 6106(a) does not: namely, conviction of an enumerated offense. Under § 6105, the Commonwealth need not prove that the defendant lacks a valid

license. Rather, it must only prove that Appellant was convicted of an enumerated offense.

Similarly, § 6106(a) contains a statutory element that § 6105(a) does not: namely, lack of a valid license.

*Williams,* 920 A.2d at 891.

¶ 17 We note that it is unlikely that one convicted of one of the enumerated offenses would be able to obtain a license to carry a concealed weapon. But additionally, under Section 6106(a), while a person may not carry a firearm concealed on his or her person or in his or her vehicle, a person *may* have a firearm in his or her home or business. However, if one has been convicted of one of the enumerated offenses, that person may not possess a firearm anywhere, including in his or her home or business. Thus, a person can violate Section 6105(a) without violating Section 6106(a) for this reason as well. That distinction also separates the two offenses.

¶ 18 Judgment of sentence affirmed.