J-S14016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN WILSON, | |
| Appellant | No. 802 EDA 2014 |

Appeal from the Judgment of Sentence of February 19, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005803-2012

BEFORE:  DONOHUE, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 06, 2015**

Appellant, Ryan Wilson, appeals from the judgment of sentence entered on February 19, 2014 in the Criminal Division of the Court of Common Pleas of Philadelphia County.  We affirm.

The trial court summarized the undisputed facts in this case as follows:

On April 27, 2012, Philadelphia police officer Deborah Grooms and her partner[,] police officer Nelson[1,] were patrolling in the area of the 6900 block of Forrest Avenue, Philadelphia, in response to a report of a home invasion a few blocks over.  The home invasion report was received at 11:10 a.m. and was in reference to 1966 West 73rd Avenue.  The flash information for the suspects was two black males, 18 to 20 years old.  One of the males was described as having dark skin, a thin build, a thin moustache, and wearing a black track jacket.

---

[1] Officer Nelson's first name is not located in the certified record.

Two hours later, at 1:19 p.m., Officer Grooms observed [Appellant] traveling northbound in the southbound lane of Forrest Avenue while on a bicycle. Seconds later, [Appellant] turned to look back at [Officers Groom and Nelson] who were travelling 40 to 50 feet behind [Appellant] in their police car. Upon observing the officers, [Appellant] grabbed the front of his waistband and crossed to the other side of the street, while still riding his bicycle. Based upon her experience, Officer Grooms believed that [Appellant] was trying to conceal a weapon when he grabbed his waistband.

Officer Grooms attempted to ride up next to [Appellant] in the[] police car. When [Appellant] was near the front-passenger tire of the police car, Officer Nelson ordered [Appellant] to "stop." The officers wanted to stop [Appellant] for the investigation because they believed he met the flash [information] from the earlier home invasion. [Appellant] is a young black male with a beard, and he was wearing a black hooded sweatshirt and black Nike track pants with a white stripe.

In response to Officer Nelson instructing [Appellant] to stop, [Appellant] took off at a high rate of speed on his bicycle into the alleyway of 6900 Forrest Avenue. As Officer Grooms pursued [Appellant], she observed him jump off the bicycle, slam it to the ground, and then throw an object to the ground. When the object hit the ground, it made a clicking sound that Officer Grooms believed — based upon her experience — was consistent with a firearm. [Appellant] was arrested shortly after he exited the alleyway. Officer Grooms went back to the alleyway and recovered a firearm, which was a Glock handgun with an extended clip loaded with 27 bullets and one in the chamber.

Based upon her five years of experience as a police officer in the area, Officer Grooms regarded the area of the 6900 block of Forrest Avenue as a high crime area known for shootings, robberies, and home invasions. Officer Grooms typically recovers five to ten firearms from the front waistband area.

Trial Court Opinion, 8/15/14, at 1-2.

On May 24, 2012, the Commonwealth filed an information charging

Appellant with possession of firearms prohibited, firearms not to be carried

without a license, carrying firearms on the public streets of Philadelphia, and possession of an instrument of crime (PIC).[2]  On July 9, 2012, Appellant moved to suppress the firearm seized by Officer Grooms.  On November 21, 2013, the trial court convened a hearing on Appellant's motion and heard testimony from Officer Grooms.  The trial court denied Appellant's motion on December 13, 2013 and, on that same day, Appellant proceeded to a stipulated bench trial based on the factual record developed at the suppression hearing.  At the conclusion of trial, the court found Appellant guilty of possession of firearms prohibited, firearms not to be carried without a license, and carrying firearms on the public streets of Philadelphia.[3]  On February 19, 2014, the trial court sentenced Appellant to an aggregate term of 48 to 96 months' incarceration.  This appeal followed.[4]

Appellant's brief raises the following question for our review:

_____

[2] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108, and 907(A).  The record also reflects that a criminal complaint charged Appellant with knowing and intentional possession of a controlled substance (marijuana) under 35 P.S. § 780-113(a)(16).  A disposition on this offense was entered on May 24, 2012 before the magistrate.

[3] The district attorney *nolle prossed* the PIC charge.

[4] Appellant filed a timely notice of appeal on March 13, 2014.  Thereafter, on March 25, 2014, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  After seeking an extension of time, Appellant filed a concise statement on July 29, 2014.  The trial court issued its Rule 1925(a) opinion on August 15, 2014.

[Did the trial court err in denying Appellant's motion to suppress since the officers lacked reasonable suspicion to stop Appellant and the abandonment of the handgun was therefore coerced]?

Appellant's Brief at 3.

Appellant challenges an order denying his motion to suppress physical evidence. In reviewing such claims, we apply a well-established standard of review.

> In reviewing a trial court's denial of a motion to suppress physical evidence, this Court must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 980 A.2d 667, 670 (Pa. Super. 2009), *appeal denied*, 990 A.2d 730 (Pa. 2010).

In this case, Appellant claims that the trial court erred when it concluded that Officer Grooms had reasonable suspicion to conduct an investigative detention. We begin our analysis of this claim by identifying the precise point at which Appellant's detention commenced. Once we have fixed the point at which Appellant's detention arose, we then consider whether the facts available to Officer Grooms before that time, and any reasonable inferences flowing therefrom, were sufficient to establish reasonable suspicion and, hence, justify Appellant's detention.

- 4 -

Traditionally, we have identified three categories of interaction between citizens and the police. *See Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995).

> The first of these is a "mere encounter" ... which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Williams*, 980 A.2d at 671, *quoting Commonwealth v. Allen*, 681 A.2d 778, 782 (Pa. 1996) (citations omitted). An investigative detention occurs where police conduct, under the totality of the circumstances, would cause a reasonable person to believe that he was not free to leave. *Williams*, 980 A.2d at 671. The factors relevant to this analysis include, but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and, the nature of any questions asked or any commands that are issued. *Commonwealth v. Beasley*, 761 A.2d 621, 624-625 (Pa. Super. 2000), *appeal denied*, 775 A.2d 801 (Pa. 2001). We conclude that, when Officer Grooms and her partner approached Appellant on his bicycle and advised him to stop, a reasonable person in Appellant's position would not have felt free to depart. *Commonwealth v. Ranson*, 103 A.3d 73, 77 (Pa. Super.

2014) (appellant subjected to an investigative detention when uniformed officers commanded appellant to stop). Thus, an investigative detention commenced at that moment.

Having fixed the point at which Appellant was detained for investigatory purposes, we consider whether the facts available to Officer Grooms before that time were sufficient to establish reasonable suspicion. Relevant to this determination, we have said:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009), *appeal denied*, 990 A.2d 727 (Pa. 2010).

A defendant's presence in a high crime area is one factor supporting a determination that reasonable suspicion exists. *Foglia*, 979 A.2d at 361. Moreover, if the defendant engages in hand movements which the police associate, based on their experience, with the concealment of a weapon, those movements support a valid search for weapons in the location where

- 6 -

the movements occurred. *Id.*, *citing* **In Interest of O.J.**, 958 A.2d 561 (Pa. Super. 2008) (*en banc*), *appeal denied*, 989 A.2d 918 (Pa. 2010).

In this case, Officer Grooms testified that she and her partner were on a vehicular patrol near 6900 Forrest Avenue in response to a home invasion that occurred at approximately 11:10 a.m. Officer Grooms was familiar with the area since she had worked there for about five years. She described the area as having a high volume of criminal activity, including drug-trafficking, gun violence, robberies, and home invasions. Officer Grooms testified that, based upon her experience with armed suspects, individuals often conceal weapons in the waistband of their pants.

Before detaining Appellant for investigative purposes, Officer Grooms believed that Appellant loosely fit the description of one of the home invasion suspects because of his facial hair and dark clothing. Thereafter, Officer Grooms and her partner began to follow Appellant in a marked police vehicle as he peddled his bicycle. As the officers approached Appellant, Officer Grooms observed Appellant turn his head to look at the officers and then adjust the waistband of his pants in a manner she perceived to be consistent with the concealment of a firearm. N.T., 11/21/13, at 10 ("[Appellant grabbed t]he front of his waistband as soon as he observed police, which I believe he was trying to conceal a weapon."). Immediately afterwards, Officer Grooms' partner instructed Appellant to stop but Appellant took off down an alley and threw down his bicycle and a firearm.

We conclude that, based upon her experience and observations, Officer Grooms articulated sufficient, individualized facts to support Appellant's detention for investigative purposes.  *See Commonwealth v. Grahame*, 7 A.3d 810, 816 (Pa. 2010) (protective search for weapons justified where officer articulates individualized, objective basis for perceiving threat of armed violence).  Since the Commonwealth established reasonable suspicion to support Appellant's detention, his abandonment of a firearm in this case was not coerced by unlawful police activity and the trial court correctly concluded that suppression was not warranted.  *Commonwealth v. Boyd*, 987 A.2d 786, 790-794 (Pa. Super. 2008).  Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2015