J-S29022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDREW J. SWEENEY | |
| Appellant | No. 1353 WDA 2014 |

Appeal from the Judgment of Sentence June 12, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016492-2013

BEFORE:  PANELLA, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                FILED:  JUNE 05, 2015

Appellant, Andrew J. Sweeney, appeals from the June 12, 2014 judgment of sentence of 18 months' probation imposed after the trial court found Appellant guilty of two counts of possession of a controlled substance.[1]  After careful review, we affirm.

The trial court summarized the factual background of this case in the following manner.

> […] Officer [James] Goss of the City of McKeesport Police Department was working the night shift on the evening of November 16, 2013.  While on duty, he received a call from Allegheny County

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

Dispatch for service at Beemer's [B]ar for suspected narcotics activity. Upon arrival at Beemer's Bar, the police officers spoke to the bar manager who made a statement regarding her observations about [Appellant]. The bar manager was the known and identified caller to 911. Thereafter, she pointed to [Appellant] and indicated "he's the one." Officer Goss and his partner then approached [Appellant] and asked him to step outside so they could speak to him. Officer Goss testified that he declined to question [Appellant] inside the bar due to officer safety concerns.

Once Officer Goss, his partner, and [Appellant] were in the foyer of the bar, he explained why they were there and asked [Appellant] for permission to search his person. [Appellant] gave his consent, and Officer Goss found cocaine in his right front watch pocket. [Appellant] was thereafter placed under arrest.

At trial, the parties stipulated to the crime lab results, which were positive for heroin and cocaine. The parties also stipulated to the Affidavit of Probable Cause[.]

Trial Court Opinion, 12/23/14, at 1-2 (citations omitted).[2]

On January 16, 2014, the Commonwealth filed an information charging Appellant with the aforementioned offenses as well as possession of drug paraphernalia.[3] On April 3, 2014, Appellant filed a motion to suppress evidence on the basis that Officer Goss lacked reasonable suspicion to

_____

[2] The trial court's Rule 1925(a) opinion does not contain pagination. For ease of reference, we have assigned each page a corresponding page number.

[3] 35 P.S. § 780-113(a)(32).

search or seize Appellant.  Appellant's Motion to Suppress, 4/3/14, at 3-4.[4]

The trial court held a hearing on Appellant's motion on May 29, 2014, and on June 10, 2014, the trial court denied said motion.  On June 12, 2014, Appellant proceeded to a stipulated bench trial, and the trial court found Appellant guilty of two counts of possession of a controlled substance.  N.T., 6/12/14, at 15.  The trial court found Appellant not guilty of possession of drug paraphernalia.  *Id.* at 16.  At that time, the trial court sentenced Appellant to 18 months' probation on the first count, possession of heroin, and imposed no further penalty on count two, possession of cocaine.  *Id.* at 19.  No post-sentence motions were filed.

On July 9, 2014, Appellant filed a *pro se* notice of appeal.[5]  On August 11, 2014, the trial court appointed the Public Defender's Office to represent

---

[4] Appellant's motion to suppress does not contain pagination.  We have assigned corresponding page numbers for ease of reference.

[5] Appellant's notice of appeal is docketed on July 14, 2014.  However, Appellant was incarcerated during this time, and the certified record contains a copy of the envelope Appellant used for mailing his notice of appeal, which shows a postmark of July 9, 2014.  Under the prisoner mailbox rule, "a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing."  **Commonwealth v. Chambers**, 35 A.3d 34, 38 (Pa. Super. 2011) (citation omitted), *appeal denied*, 46 A.3d 715 (Pa. 2012).  As such, we treat July 9, 2014 as the filing date.

Appellant, and appointed counsel filed an amended notice of appeal on August 20, 2014.[6]

On appeal, Appellant raises the following issues for our review.

> I. [Whether] the trial court erred in denying [Appellant's] motion to suppress where police lacked reasonable suspicion to believe [Appellant] was engaged in criminal conduct at the time they stopped him[?]

> [II.] [Whether] [Appellant's] consent to the police search of his person was not voluntary since his consent was provided in response to the coercive and illegal police conduct[?]

Appellant's Brief at 4.[7]

When reviewing a challenge to a trial court's denial of a suppression motion, we adhere to the following well-established standard of review.

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

_____

[6] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

[7] Appellant's brief enumerates one issue; however, he raises two distinct questions. For ease of discussion and review, we have amended his issues to reflect the two arguments.

*Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014) (citation omitted). Further, when evaluating a ruling on a pre-trial suppression motion, our review is limited to the evidence presented at the suppression hearing. *Commonwealth v. Ranson*, 103 A.3d 73, 76 (Pa. Super. 2014).

Appellant first argues that "[t]he police violated [his] constitutional rights to be free from unreasonable searches and seizures when they stopped him without the requisite reasonable suspicion to believe he was engaged in criminal activity." Appellant's Brief at 10. Appellant asserts, "the seizure was unconstitutional as police did not independently observe any actions indicative of criminal activity[,]" and "the only information police had before they seized [Appellant] was the information from the unidentified bartender that [Appellant] possessed illegal drugs." *Id.* at 10, 16. The Commonwealth counters Appellant's argument by averring, "[u]nder the totality of the circumstances, police had reasonable suspicion that [A]ppellant was engaging in criminal activity and an investigative detention of [A]ppellant was justified." Commonwealth's Brief at 5.

An encounter between a police officer and a citizen falls into one of three categories.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional

equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Fleet***, --- A.3d ---, 2015 WL 1845917, at *4 (Pa. Super. 2015). We agree with Appellant and Commonwealth that the necessary level of suspicion required to support the encounter in this case is reasonable suspicion. Appellant's Brief at 10; Commonwealth's Brief at 5; ***see Ranson, supra*** at 77 (observing a "stop" occurs when police officers command a citizen to stop). Therefore, we proceed to our determination as to the constitutionality of the detention.

In assessing whether an investigative detention is constitutional, the following standard informs our decision.

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Ranson***, ***supra***, *citing* ***Commonwealth v. Foglia***, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*), *appeal denied*, 990 A.2d 727 (Pa. 2010).

Our Supreme Court has provided the following guidance regarding information provided to police.

> An anonymous tip, corroborated by independent police investigation, may exhibit sufficient indicia of reliability to supply reasonable suspicion for an investigatory stop. However, we have recognized a known informant's tip may carry sufficient "indicia of reliability" to justify an investigative detention despite the fact that it may prove insufficient to support an arrest or search warrant.

*Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010). The Court also observed, "[i]f the information from an anonymous informant is false, no action against the informant is possible; however, providing false information will have consequences for a known informant … distinguishing the presumptive quality of information, and tipping the scales toward credibility, not away from it." *Id.* at 478.

Officer Goss testified that, at the time of the suppression hearing, he was employed by the City of McKeesport Police Department as a law enforcement official for approximately nine years and had received additional training in drug identification and attended numerous firearms and other classes. N.T., 5/29/14, at 5. He testified at the suppression hearing as to his actions responding to the 911 call as follows.

> [The Commonwealth]:
>
> Q. Officer Goss, what did you notice when you went into [Beemer's B]ar?
>
> [Officer Goss]:

A. The bar manager, who made the 911 call, pointed to [Appellant].

Q. Okay. And based off the information you had on the 911 call, did the description fit anybody you saw in the bar?

A. Yes.

…

[The trial court]:

All right. Let the record reflect that Officer James Goss has identified [Appellant].

[The Commonwealth]:

Q. Did you have a conversation with the bar manager when you walked in?

A. A brief one, yes. As I walked -- myself and Officer Matthews walked in through the foyer into the main entrance of the bar. The bar manager observed us because we were in full uniform and pointed to [Appellant], said, "[h]e's the one."

*Id.* at 8-9. He later testified on cross-examination that he entered Beemer's Bar "within ten minutes" from when the call was dispatched. *Id.* at 11.

Under the totality of the circumstances, in light of Officer Goss' training and experience, we conclude there was reasonable suspicion to believe Appellant was engaged in criminal conduct. *See Ranson*, *supra*. Officer Goss responded to the 911 dispatch of illegal drug activity within ten minutes of its receipt, he spoke with the bar manager who made the call, Appellant fit the description of that given on the 911 call, and the bar manager positively identified Appellant as the subject of her 911 call.

Appellant argues that the "information provided by the bartender in this case must be regarded as an anonymous tip." Appellant's Brief at 16. However, upon response to the 911 call, Officer Goss identified the informant as the bar manager, and she reaffirmed the information in her call by identifying Appellant. Therefore, the presumptive quality of the information is credible, and we conclude it was sufficiently reliable to support an investigative detention. **See Brown**, **supra** at 477-478; **see also Commonwealth v. Williams**, 980 A.2d 667, 671-672 (Pa. Super. 2009) (concluding that a tip made to a police officer in person where officer had "an opportunity to observe the witness' demeanor and assess his credibility in light of his past experience with investigating crimes" affords the tip more weight than "a mere anonymous phone call[]"), *appeal denied*, 990 A.2d 730 (Pa. 2010); **Ranson**, **supra** at 78-79 (distinguishing cases where general and vague anonymous tips were deemed unconstitutional to support reasonable suspicion where veteran officer "had an opportunity to assess: (1) the demeanor of the tipster; (2) the basis of the tipster's knowledge; and, (3) the tipster's present ability to perceive Appellant[]"). Accordingly, Appellant's argument is meritless.

Appellant also argues his consent to search his person was not voluntary. Appellant's Brief at 18-19. We conclude this argument is waived. At the suppression hearing, Officer Goss testified that he "asked permission to search [Appellant,]" and "[Appellant] gave me permission." N.T.,

5/29/14, at 11. At no point during the suppression hearing did Appellant challenge the voluntariness of his consent to search or argue it was coerced. *See generally id.* at 3-24. Therefore, the challenge is waived. *See* Pa.R.A.P. 302 (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Further, Appellant never identified the voluntariness of his consent to the search in his Rule 1925(b) statement as a claim of error; as such, any such challenge is waived on appeal. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (holding Rule 1925(b) is a bright-line rule, and any issue not included in the 1925(b) statement is waived on appeal); *accord* Pa.R.A.P. 1925(b)(4)(vii).

Based on the foregoing, we conclude Appellant is not entitled to relief, and the trial court properly denied his motion to suppress. Accordingly, we affirm the June 12, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2015

- 10 -