J-S04013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAITLYN CHANTEL KUHN | : | |
| | : | |
| Appellant | : | No. 960 MDA 2017 |

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Adams County Criminal Division at No(s):
CP-01-CR-0000714-2016

BEFORE:  SHOGAN, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 27, 2018**

Appellant, Caitlyn Chantel Kuhn, appeals from the judgment of sentence imposed on May 17, 2017, following her nonjury conviction of various drug offenses.  We affirm.

The trial court, sitting as the suppression judge, entered the following findings of fact:

1. On May 27, 2016, [Appellant] resided at 344 South Washington Street, Apartment 1, Gettysburg, Adams County, Pennsylvania, with [Appellant's] boyfriend, Walter Brown.

2. This residence was an approved residence for Walter Brown, who was under the supervision of the Adams County Department of Probation Services on or about May 27, 2016.  Walter Brown was on supervision for possession with intent to deliver crack cocaine and DUI.

3. Walter Brown signed Adams County Department of Probation Services Standard Rules of Supervision for Probation, Intermediate Punishment and Parole in the

presence of Probation Officer Livelsberger on December 14, 2015. Included was Rule 4 which stated "you must agree to permit any probation/parole officer, to search your person, enter into and search your residence, vehicle or any other property under your control without warrant at any time upon reasonable suspicion of violation and to ensure compliance with all conditions of your sentence."

4. On or about May 27, 2016[, Appellant] allowed Walter Brown to live with her at the above address. [Appellant] knew that Walter Brown was on probation supervision.

5. Probation Officer Clayton McKim received information from a confidential informant (hereinafter CI) several days to a week prior to the search on May 27, 2016. The CI bought drugs from [Appellant] at her residence, 344 South Washington Street, Apartment 1. The CI also advised Officer McKim that the CI was aware that on multiple occasions over a period of several months prior to May 27, 2016, other individuals bought drugs at the apartment of [Appellant] and Walter Brown, including heroin, crack cocaine and pain killers.

6. Officer McKim received additional information from an unidentified informant concerning drug dealing at [Appellant's] and Walter Brown's apartment within a month prior to the search on May 27, 2016.

7. Several days prior to May 27, 2016, Officer McKim provided the above information to Probation Officer Matthew Livelsberger who was supervising Walter Brown.

8. Officer Matthew Livelsberger had been supervising Walter Brown since December 2015. Walter Brown was on supervision with the Department of Probation Services for possession with intent to deliver crack cocaine and DUI.

9. Between December 2015 and May 27, 2016, Officer Livelsberger had attempted visits with Walter Brown at 344 South Washington Street, Apartment 1, Gettysburg on numerous occasions at different times throughout the day and each time no one at the residence would answer the door.

10. On May 26, 2016, Officer Livelsberger obtained permission from his supervisor to conduct a warrantless search of the residence of Walter Brown at 344 South Washington Street, Apartment 1, Gettysburg, Pennsylvania to search for controlled substances.

11. On May 27, 2016, at approximately 6:00 a.m. Probation Officers Livelsberger and McKim, two other probation officers and two Gettysburg Borough Police Officers arrived at [Appellant's] and Walter Brown's apartment and knocked on the front door, back door and windows for at least 10 to 15 minutes and announced their presence, but no one responded.

12. Probation Officer Livelsberger spoke on the telephone with a woman who identified herself as Walter's girlfriend's mother. This woman informed Officer Livelsberger that Walter and [Appellant] should be at the residence, but "If he wasn't there, there was a possibility he was at SCCAP [a food bank] doing community service."

13. Officer Livelsberger ultimately determined that Walter Brown was not at SCCAP.

14. Officer Livelsberger learned from an upstairs neighbor that the landlord could provide access to the apartment. The landlord unlocked an outside door which opened into the sunroom/laundry room of [Appellant's] and Walter Brown's apartment. Probation officers then proceeded to another interior door which they determined was locked. Officers knocked on that door, and Walter Brown answered the door almost immediately.

15. Per probation's procedures, Walter Brown was handcuffed and Officer Livelsberger explained they were there to conduct a probation search.

16. Officer Livelsberger spoke with [Appellant]. [Appellant] and her daughter were escorted out of the apartment. [Appellant] remained outside the apartment during the initial probation search.

17. Officer Livelsberger, Officer McKim and the two Gettysburg Police Officers entered the apartment, drew their firearms and ensured no one else was present in the apartment.

18. The two probation officers and Gettysburg Police officers conducted a search of the apartment. Officer Livelsberger searched the bathroom and observed an open closet which contained men's body wash, women's body wash, towels, soap and other items, including a clutch-style purse. The purse was open and at eye level. Officer Livelsberger observed a pinkish colored pill. Officer Livelsberger opened the clutch purse and observed two clear plastic baggie corners containing suspected crack cocaine.

19. At that point, Officer Livelsberger stopped the probation search and contacted Trooper James O'Shea with the Pennsylvania State Police, Vice-Narcotics Unit. Within 45 minutes to an hour, Trooper O'Shea arrived at the apartment. At this point, because of the heat, Walter Brown and [Appellant] were brought back into the apartment. [Appellant] was not handcuffed at this point.

20. Trooper O'Shea reviewed the alleged contraband discovered in the purse/clutch and determined that probable cause existed to obtain a search warrant for the residence.

21. Trooper O'Shea spoke with [Appellant] and asked whether she would provide written consent for a search of the apartment. [Appellant] requested an opportunity to speak with an attorney and was provided this opportunity.

22. Trooper O'Shea advised [Appellant] that she could provide written consent to search the apartment, which would expedite the process, or Trooper O'Shea would apply for a search warrant.

23. Prior to granting consent, Trooper O'Shea observed [Appellant] clutching a large purse, and at that time removed the purse from [Appellant] and handcuffed [Appellant] for officer safety.

24. Ultimately, [Appellant] agreed to provide written consent for a search of her residence. Trooper O'Shea read the entire

written consent form to [Appellant] and [Appellant] voluntarily signed the consent form.

25. A search of [Appellant's] purse revealed numerous pills and United States currency.

Findings of Fact and Conclusions of Law, 3/21/17, at 1–5.

Appellant was charged with various drug offenses on May 27, 2016, and on December 8, 2016, she filed a pretrial motion to suppress. The trial court conducted a suppression hearing on February 13, 2017, and March 21, 2017, denying Appellant's request for suppression.

In denying Appellant's motion, the suppression court entered the following conclusions of law:

1. Adams County Probation Officers McKim and Livelsberger had sufficient reasonable suspicion to conduct a warrantless probation search on the apartment of [Appellant] and Walter Brown on May 27, 2016 and followed proper procedures in accordance with 42 Pa. C.S.A. § 9912.

2. The "knock and announce" rule, set forth in Pennsylvania Rule of Criminal Procedure 207 was not applicable in this case because law enforcement authorities were not executing a search warrant on the apartment of [Appellant] and Walter Brown. See Pennsylvania Rule of Criminal Procedure 207 and **Commonwealth v. Richter**, 791 A.2d 1181, 1186 (Pa. Super 2002).

3. Adams County Probation Officers acted reasonably when they entered the apartment of [Appellant] and Walter Brown by knocking and announcing their purpose for approximately 15 minutes, attempting to locate Walter Brown at another location, calling the emergency contact person to determine the whereabouts of Walter Brown, utilizing the landlord to peacefully enter the sunroom/laundry room of [Appellant's] and Walter Brown's apartment, and by knocking and announcing their presence at the locked interior door before

entering into the kitchen of the apartment of [Appellant] and Walter Brown.

4. Trooper O'Shea of the Pennsylvania State Police had sufficient probable cause to obtain a search warrant for the apartment of [Appellant] and Walter Brown based on his observations of suspected crack cocaine located in the clutch purse.

5. Trooper O'Shea legally and correctly advised [Appellant] that if [Appellant] did not provide written consent to search the apartment then Trooper O'Shea would apply for and obtain a search warrant for a search of the apartment.

6. [Appellant] was in custody prior to [Appellant] providing consent to search the apartment.

7. [Appellant's] written consent was knowing and voluntary. See **Commonwealth v. Dressner**, 336 A.2d 414, 415–417 (Pa. Super. 1975) for factors to consider when determining voluntariness of a consent to search.

Findings of Fact and Conclusions of Law, 3/21/17, at 5–7 (emphasis supplied).

Appellant proceeded to a waiver trial on March 21, 2017. The trial court summarized the remaining procedural history as follows:

At the conclusion of the non-jury trial, this [c]ourt found Appellant guilty of count 2, possession with intent to deliver a controlled substance (Oxycodone and Alprazolam); count 3, simple possession (cocaine); count 4, simple possession (Oxycodone and Alprazolam), and count 5, possession of drug paraphernalia.[20] This [c]ourt found Appellant not guilty of count 1, possession with intent to deliver controlled substance (cocaine).[21]

[20] 35 [P.S.] §§ 780-113(a)(30), 780-113(a)(16), 780-113(a)(32), respectively.

[21] 35 [P.S.] § 780-113(a)(30).

On May 15, 2017, this [c]ourt sentenced Appellant on count 2 to no less than three (3) months nor more than twenty three (23) months in partial confinement at the Adams County Adult Correctional Complex. This [c]ourt imposed a probationary sentence of twelve (12) months for counts 3 and … 5, but did not impose a sentence on count 4 as it merged with count 2. The sentence[s] for counts 3 and 5 were to run [concurrently to] each other but consecutive to the sentence imposed on count 2. Thereafter, on June 23, 2017, Appellant filed a Motion for Bail Pending Appeal. On July 18, 2017, this [c]ourt held a hearing on [Appellant's] Motion for Bail Pending Appeal, which was granted with certain conditions imposed.

On June 12, 2017, Appellant filed a Notice of Appeal. By Order of Court dated June 13, 2017, Appellant was directed to file a concise statement of matters complained of on appeal. Appellant filed a Motion for Extension of Time to file her concise statement wherein counsel requested fourteen days from the date defense counsel received the notes of testimony. This [c]ourt, by Order of Court dated July 10, 2017, granted Appellant's request. Appellant timely filed her concise statement on July 31, 2017.

Trial Court Opinion, 8/7/17, at 3–4.

Appellant presents the following questions for our consideration:

1. Did the suppression court err in failing to find that the probation officers did not have reasonable suspicion or probable cause to search [Appellant's] residence based on an uncorroborated confidential informant's tip in violation of [Appellant's] right to be free from unreasonable search and seizure under both, the Pennsylvania and United States' constitutions?

2. Did the suppression court err in failing to find that the probation officers' entry into [Appellant's] residence was effectuated from a government agent's unlawful entry into the residence in violation of [Appellant's] right to privacy under, both, the Pennsylvania and United States' constitutions?

Appellant's Brief at 2.

As a preliminary matter, we examine whether Appellant has properly preserved her issues. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). ***See also Commonwealth v. Williams***, 980 A.2d 667, 671 (Pa. Super. 2009) (argument waived where the appellant does not "even allege that he raised the issue at the suppression hearing"); ***Commonwealth v. York***, 465 A.2d 1028, 1032 (Pa. Super. 1983) (citation omitted) ("[A] new and different theory of relief may not be successfully advanced for the first time on appeal.").

In her motion to suppress, Appellant asserted that the search of her residence was unlawful for the following reasons:

a) Said search was conducted without a search warrant.

b) Said search was conducted without voluntary consent.

c) The search of [Appellant's] residence and personal effects, including pocket books and purses, was not properly ancillary to any probation search of Walter Brown.

Motion for Suppression of Evidence, 12/8/16, at ¶ 4.

On appeal, Appellant first contends that the suppression court erred in denying her motion because the warrantless search of her residence was not supported by reasonable suspicion or probable cause. Appellant's Brief at 8. The crux of Appellant's argument is that "[t]he confidential informant's tip was unreliable, uncorroborated, and without a basis of knowledge at the time officers' [sic] entered [Appellant's] residence." Appellant's Brief at 14.

- 8 -

Upon review of the certified record, we decline to address Appellant's issue, as presented. Appellant did not challenge the warrantless search of her apartment before the suppression court on grounds that it was not supported by reasonable suspicion or probable cause because the CI's information was unreliable.[1] Rather, she first raised this argument in her Pa.R.A.P. 1925(b) statement. Pa.R.A.P. 1925(b) Statement, 7/31/17, at ¶ 1. Thus, Appellant's first issue is waived. Pa.R.A.P. 302(a); **Williams**, 980 A.2d at 671; **York**, 465 A.2d at 1032.[2]

Appellant next argues that the suppression court erred in denying her motion to suppress because entry into her residence was illegally effectuated through a government agent, *i.e.*, her landlord. Appellant's Brief at 14. The

_____

[1] We note that defense counsel, Attorney Cook, argued to the suppression court that, "this confidential informant . . . does not make a controlled buy." N.T. Suppression, 2/13/17, at 76. At that point, the suppression court stated:

> THE COURT: Let me help you out, Mr. Cook. I believe that the Commonwealth has presented sufficient evidence to show that they had a reasonable suspicion to conduct a probation search. I find . . ., looking at the totality of the circumstances and that's for probable cause, I think given the totality of the circumstances they determined there was reasonable suspicion so I have made that finding.

*Id.* Appellant has not challenged this conclusion, which incorporated Appellant's argument that the CI did not make a controlled buy.

[2] Even if not waived, Appellant's first issue would not warrant relief. We reach this conclusion based on the suppression court's findings of fact, which are supported by the record, and its conclusions of law, which are without error.

Commonwealth asserts that this issue "was not properly raised in [Appellant's] Motion for Suppression of Evidence." Commonwealth's Brief at 11 (citing Pa.R.Crim.P. 581(D)).

Although Appellant did not expressly raise this argument in her motion to suppress, it was the basis for the trial court's solicitation of memoranda from the parties and reopening the suppression hearing without objection from the Commonwealth. N.T. (Suppression), 2/13/17, at 71, 76, 78–80; N.T. (Suppression), 3/21/17, at 3. Appellant summarized this issue in her memorandum as follows:

> Here, the landlord was acting as a police agent when she provided them with the passkey. The testimony was clear that this was not a common area but rather was within the leasehold of [Appellant]. Since there was no testimony that the police officers announced their identity and purpose at the time the landlord admitted them into the residence, the manner in which the search was conducted was unreasonable and unlawful. Thus, all evidence seized by the government is fruit of the poisonous tree. The suppression motion should be granted.

Memorandum in Support of Motion for Suppression of Evidence, 2/23/17, at 5. The Commonwealth responded to Appellant's issue, Commonwealth's Memorandum in Opposition to Defendant's Motion for Suppression of Evidence, 2/27/17, at 2–6, and it was litigated at the reopened suppression hearing. N.T. (Suppression), 3/21/17, at 4–12. Thus, we conclude that Appellant sufficiently preserved this issue.

Regarding suppression rulings, our standard of review:

is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

*Commonwealth v. Williams*, ___ A.3d ___, 2017 PA Super 382, at *11–12 (Pa. Super. 2017) (internal citations omitted). Furthermore, the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

On appeal, Appellant continues to argue that her "landlord, who did not have authority to enter her residence, acted as a government agent when she unlocked [Appellant's] door at the request of probation officers." Appellant's Brief at 16. In response, the Commonwealth argues:

Here, the suppression court indicated following testimony that it believed Adams County Probation possessed reasonable suspicion and obtained proper authority to conduct the warrantless search at issue. The question then becomes whether there was anything improper about the landlord providing access to the sunroom. It is well settled that a landlord cannot consent to a warrantless search of the property. *See, e.g.,* *Commonwealth v. Davis*, 743 A.2d 946, 951 (Pa. Super. 1999). However, the property owner here did not

- 11 -

consent to the warrantless search, but rather merely supplied a key enabling the officers access to the sunroom.

Commonwealth's Brief at 13–14.

The suppression court addressed this issue in its third conclusion of law:

> 3. Adams County Probation Officers acted reasonably when they entered the apartment of [Appellant] and Walter Brown by knocking and announcing their purpose for approximately 15 minutes, attempting to locate Walter Brown at another location, calling the emergency contact person to determine the whereabouts of Walter Brown, utilizing the landlord to peacefully enter the sunroom/laundry room of [Appellant's] and Walter Brown's apartment[,] and by knocking and announcing their presence at the locked interior door before entering into the kitchen of the apartment of [Appellant] and Walter Brown.

Findings of Fact and Conclusions of Law, 3/21/17, at 6.

Upon review, we find that the suppression court's findings of fact, set forth *supra*, are supported by the record, and its legal conclusion regarding access to Appellant's sunroom is without error. As a probationer, Walter Brown had "limited Fourth Amendment rights because of a diminished expectation of privacy." ***Commonwealth v. Parker***, 152 A.3d 309, 316 (Pa. Super. 2016). In fact, Walter Brown's signature on the probation regulations acts as acknowledgment that the probation officer "has a right to conduct reasonable searches of the probationer's residence listed on the probation agreement without a warrant." ***Id.*** at 318 (quoting ***Commonwealth v. E. Williams***, 692 A.2d 1031, 1036 (Pa. 1997)).

Here, pursuant to 42 Pa.C.S. § 9912, Probation Officer Livelsberger obtained permission to conduct a warrantless search of the approved residence of Walter Brown, which was Appellant's residence. Once at the residence, the probation officers knocked on the front door, back door, and windows for at least ten to fifteen minutes and announced their presence, but no one responded. A neighbor assisted Officer Livelsberger in contacting the landlord, who unlocked an outside door which opened into the sunroom of Appellant's residence. Probation officers then proceeded to another interior door, which was locked. The officers knocked on that door, and Walter Brown answered the door almost immediately. Thus, contrary to Appellant's argument, the landlord did not engage in any conduct as a government agent to gain information for the police; she simply supplied access to a back door.[3] This measure was authorized by the Adams County Probation Policy to avoid the use of more force than necessary to secure entry into a probationer's residence. Commonwealth Exhibit 1 at ¶ 6(c)(iv)(6) ("Probation officers should enter using only the amount of force

---

[3] *Cf. Commonwealth v. Rathfon*, 705 A.2d 448 (Pa. Super. 1997) (affirming that defendant's girlfriend acted as government agent when she entered his residence without permission at request of federal authorities and gathered information that served as basis for search warrants), and *Commonwealth v. Strafford*, 749 A.2d 489 (Pa. Super. 2000) (affirming that defendant's friend acted as government agent when he entered defendant's residence at request of police and observed marijuana plants).

necessary to secure entry. Keys can often be obtained from landlords. . . .").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/18